

## NUMBERS 13-13-00659-CV
## 13-13-00660-CV
## 13-13-00661-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

**FATIH OZCELEBI, M.D.,** **Appellant,**

**v.**

**K.V. CHOWDARY, M.D., INDIVIDUALLY AND D/B/A**
**VALLEY GASTROENTEROLOGY CLINIC, P.A., AND**
**VALLEY GASTROENTEROLOGY CLINIC, P.A.,** **Appellees.**

---

### On appeal from the County Court at Law No. 7
### of Hidalgo County, Texas.

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Longoria**
**Memorandum Opinion by Justice Rodriguez**

Appellant, Fatih Ozcelebi, M.D., appeals the trial court's grant of a partial summary

judgment in favor of appellees, K.V. Chowdary, M.D., individually and doing business as

Valley Gastroenterology Clinic, P.A., (Dr. Chowdary) and Valley Gastroenterology Clinic, P.A. (VGC). The trial court purported to sever the claims subject to its partial summary judgment, thereby creating a final and appealable order. Because we agree with Dr. Ozcelebi that the trial court improperly severed the claims before us, we reverse the trial court's severance order without reaching the merits of the summary judgment and remand to the trial court.

## I. FACTUAL BACKGROUND

Dr. Ozcelebi came to the United States from Turkey to attend medical school. Upon graduation he was required, pursuant to his J-1 exchange visa, to return to Turkey for a period of two years. Seeking a waiver of this requirement, Dr. Ozcelebi applied and was hired to work with Dr. Chowdary at VGC. An employment agreement was entered into by the parties which stipulated that Dr. Ozcelebi was to work as a primary care provider in Hidalgo and Starr Counties.

Dr. Ozcelebi worked at VGC for a year and a half. Dr. Ozcelebi contends that while at VGC he was not working as a primary care physician in a medically underserved area as required by his visa and his employment affidavit. Instead, Dr. Ozcelebi claims he worked primarily as a gastroenterologist in McAllen, Texas. Dr. Ozcelebi made a number of complaints regarding his work for Dr. Chowdary at VGC, including alleged non-compliance with the J-1 visa waiver requirements.

It is undisputed that by October of 1997 the relationship between Dr. Chowdary and Dr. Ozcelebi had deteriorated.[1] Dr. Ozcelebi brought a number of complaints to Dr.

---

[1] It is also undisputed that by September of 1997 Dr. Ozcelebi had taken significant steps to open his own practice in Hidalgo County.

2

Chowdary's attention in early October of 1997. Dr. Ozcelebi claimed that he sought resolution of his complaints or a release from the employment agreement. A verbal altercation ensued. It has been Dr. Chowdary's position throughout these proceedings that Dr. Ozcelebi voluntarily terminated his employment at VCG effective October 3, 1997. Dr. Ozcelebi claims that on that day he wrote Dr. Chowdary a certified letter stating he was not resigning and that he would continue working for Dr. Chowdary at VGC.

Dr. Ozcelebi was not present at work for at least the next two business days—he alleges that he had previously notified Dr. Chowdary that he would be out of the office for those days. Dr. Ozcelebi contends that he returned to VGC and attempted to perform his duties as a VGC employee. He claims that he continued to arrive at the clinic and the hospital during his regularly scheduled times, but noted that he did not see any patients or perform any surgeries. Dr. Chowdary did not pay Dr. Ozcelebi's salary after October 3, 1997. According to the parties, on October 14, 1997, Dr. Chowdary and Dr. Ozcelebi had a second confrontation at VGC. Dr. Chowdary asked Dr. Ozcelebi to leave the premises. Dr. Ozcelebi alleges that Dr. Chowdary assaulted him during the October 14th altercation.

## II.  PROCEDURAL HISTORY

Dr. Chowdary filed suit against Dr. Ozcelebi on October 24, 1997 for damages related to Dr. Ozcelebi's alleged breach of contract. Dr. Ozcelebi answered asserting numerous defenses to Dr. Chowdary's breach of contract claim and seeking equitable relief in the form of rescission of the contract. Dr. Ozcelebi also counterclaimed for violations under Racketeer Influenced and Corrupt Organizations Act (RICO), the Texas

Free Enterprise and Anti-Trust Act (FEAT), the Employee Retirement Income Security Act (ERISA), and for breach of contract, fraud, invasion of privacy, assault, and malicious prosecution.

In April of 2013, Dr. Chowdary filed a partial motion for traditional summary judgment against Dr. Ozcelebi. Dr. Chowdary sought traditional summary judgment on issues for which he bore the burden of proof at trial, including breach of contract and his requested contractual damages and breach of fiduciary duty. Dr. Chowdary also sought traditional summary judgment on Dr. Ozcelebi's RICO and FEAT claims and on Dr. Ozcelebi's contractual defenses of unenforceability and illegality, all of which were stricken via a previous sanction order.[2] Finally, Dr. Chowdary sought traditional summary judgment on Dr. Ozcelebi's claim under ERISA that he was contractually entitled to participate in a profit-sharing plan on the basis that it was subject to federal preemption.[3] The trial court granted Dr. Chowdary's partial summary judgment against Dr. Ozcelebi in an order dated September 27, 2013 and a supplemental order dated October 4, 2013. The trial court rendered summary judgment on Dr. Chowdary's breach of contract claim and Dr. Ozcelebi's claims and defenses that were subject to the prior

---

[2] Because we determine that the trial court disposed of Dr. Ozcelebi's RICO and FEAT claims and his contractual defenses of unenforceability or illegality via its prior sanction order for the purposes of the litigation between the parties, those claims and defenses were not before the court when Dr. Chowdary filed his partial motion for summary judgment and are not considered for the purpose of this appeal.

[3] Dr. Chowdary also sought a no-evidence motion for summary judgment on Dr. Ozcelebi's claims and defenses. However, Dr. Chowdary only specifically addressed Dr. Ozcelebi's alleged claim for false imprisonment or false arrest on no-evidence grounds. While the trial court granted Dr. Chowdary's no-evidence motion as to the false imprisonment or false arrest claim, the record before this Court does not indicate that Dr. Ozcelebi pled a cause of action for false imprisonment or false arrest at the time the summary judgment was granted.

4

sanction order, and purported to sever those claims from the remaining causes of action, arguably making it final and appealable.

Dr. Ozcelebi raises nine issues on appeal. Because we determine Dr. Ozcelebi's ninth issue is dispositive, we do not address the other issues raised. *See* TEX. R. APP. P. 47.1.

## III.    IMPROPER SEVERANCE

By his ninth issue, Dr. Ozcelebi contends the trial court abused its discretion when it severed the claims subject to its order granting Dr. Chowdary's motion for partial summary judgment. Specifically, Dr. Ozcelebi contends that the trial court's order splits a single cause of action and separates claims and counterclaims into separate suits even though they are based on the same factual matters.

### A.    Standard of Review

Trial courts have broad authority in the administration of their dockets pursuant to Texas Rule of Civil Procedure 41; their decisions to grant or deny a severance will not be reversed on appeal absent an abuse of discretion. TEX. R. CIV. P. 41; *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex.1996). The trial court's discretion is not without limits. *Nicor Exploration Co. v. Fla. Gas Transmission Co.,* 911 S.W.3d 479, 482–83 (Tex. App.—Corpus Christi 1995, writ denied); *see also Dalisa, Inc. v. Bradford,* 81 S.W.3d 876, 879 (Tex. App—Austin 2002, pet. ref'd). Theirs is "a sound and legal discretion within limits created by the circumstances of the particular case." *Dalisa,* 81 S.W.3d at 879 (quoting *Womack v. Berry*, 291 S.W.2d 677, 683 (Tex. 1956)). Such

5

discretion may not be exercised contrary to legal rules and principles applicable in the particular case.   *Id.*

### B.    Applicable Law

"The longstanding rule in Texas is that appeals are allowed only from final orders or judgments."   *Duncan v. Calhoun County Nav. Dist.,* 28 S.W.3d 707, 709 (Tex. App.—Corpus Christi 2000, pet. denied); *see Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 272 (Tex. 1992).   The trial court's severance order makes the judgment in the severed portion of the case final for purposes of our appellate jurisdiction—regardless of whether the severance was proper.   *See Nicor Exploration,* 911 S.W.3d at 482–83; *In re Henry,* 388 S.W.3d 719, 725 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (orig. proceeding) (citing *Lehmann v. Har-Con Corp.,* 39 S.W.3d 191, 195 (Tex. 2001)).   "The propriety of the severance may be raised by the parties on appeal and the case may be reversed on the ground that the severance should not have been granted."   *Nicor Exploration,* 911 S.W.3d at 482–83 (quoting *Rutherford v. Whataburger, Inc.,* 601 S.W.2d 441, 443 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.)).

Rule 41 of the Texas Rules of Civil Procedure states that "[a]ny claim against a party may be severed and proceeded with separately."   TEX. R. CIV. P. 41.   The Texas Supreme Court has held that the controlling reasons for severing a case are to "do justice, avoid prejudice, and further convenience."   *In re State,* 355 S.W.3d 611, 613–14 (Tex. 2011) (citing *F.F.P. Oper. Partners v. Duenez,* 237 S.W.3d 680, 693 (Tex. 2007); *Guar. Fed. Savs. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990) (op. on reh'g)); *Duncan,* 28 S.W.3d at 709; *Nicor Exploration Co.,* 911 S.W.2d at 482.   In light of

these fundamental principles, the Texas Supreme Court has enumerated several requirements for a proper severance: (1) does the controversy involve more than one cause of action; (2) is the severed claim the proper subject of a lawsuit if asserted independently of the other claims; and (3) does the severed claim involve the same facts and issues such that it is interwoven with the remaining actions. *In re State,* 355 S.W.3d at 614; *Guaranty Fed.,* 793 S.W.2d at 658; *Dalisa,* 81 S.W.3d at 879–80. Practically, a severance divides a lawsuit into two or more independent suits adjudicated by distinct and separate judgments. *See Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 383 (Tex. 1985); *Kansas Univ. Endowment Ass'n v. King,* 350 S.W.2d 11, 19 (Tex. 1961); *Dalisa,* 81 S.W.3d at 879.

However, as a general and overarching rule, "[s]everance of a single cause of action into two parts is never proper" and constitutes an abuse of discretion.[4] *See Pierce v. Reynolds*, 329 S.W.2d 76, 79 & n.1 (Tex. 1959); *Duncan,* 28 S.W.3d at 710. Severance should not be granted for the purpose of enabling the litigants to obtain an early appellate ruling on the trial court's determination of one phase of the case. *See Pierce*, 329 S.W.2d at 79 & n.1; *Dalisa,* 81 S.W.3d at 879–80 (recognizing that the Texas Rules of Civil Procedure do not contemplate the severance of one cause of action into two or more parts); *Duncan,* 28 S.W.3d at 710; *see also Pustejovsky v. Rapid-American Corp.,* 35 S.W.3d 643, 647 (Tex. 2000) ("The reason for the [single action] rule lies in the necessity for preventing vexatious and oppressive litigation, and its purpose is

---

[4] "A 'cause of action' consists of a plaintiff's primary right to relief and the defendant's action or omission that violates that right." *Duncan v. Calhoun County Nav. Dist.,* 28 S.W.3d at 707, 710 (Tex. App.—Corpus Christi 2000, pet. denied).

accomplished by forbidding the division of a single cause of action so as to maintain several suits when a single suit will suffice."); *c.f., Saxer v. Nash Philips-Copus Co. Real Estate,* 678 S.W.2d 736, 739 (Tex. App.—Tyler 1984, writ ref'd n.r.e.) ("Although a severance is sometimes ordered merely to expedite appellate review of a partial summary judgment, that reason alone is not grounds to find an abuse of discretion *if* the claim is properly severable.") (emphasis added). "The severance of a single cause of action will ultimately result in two judgments that cannot stand independently of each other." *Duncan,* 28 S.W.3d at 709. This creates two final judgments subject to appeal, creates two appellate records, prevents an appellate court from reviewing the whole controversy at one time, and instead creates separate and distinct appellate issues. *See King,* 350 S.W.2d at 19 (recognizing that each severed cause terminates into a "separate, final and enforceable judgment").

The rule allowing partial summary judgment allows the trial court to dispose of certain issues without adjudicating the rights of the parties on the entire case—thereby simplifying the issues for trial. *See Duncan,* 28 S.W.3d at 710; *see also* TEX. R. CIV. P. 166a. However, severance is not appropriate for a partial motion for summary judgment unless the factors enumerated by the Texas Supreme Court are met. *See In re State,* 355 S.W.3d at 613–14. Though the propriety of a severance must be reviewed on a case-by-case basis, when the severed and unsevered claims arise out of the same transaction or occurrence and the facts necessary to show liability and damages with regard to the claims are roughly the same, severance is improper. *See State Dep't of Hwys. & Pub. Transp. v. Cotner,* 845 S.W.2d 818, 819 (Tex. 1993); *Nicor Exploration Co.,*

8

911 S.W.2d at 482; *see also Hummell v. Medaphis Phys. Serv. Corp.,* No. 13-97-00148-CV, 1998 WL 35277043, at *3 (Tex. App.—Corpus Christi Mar. 5, 1998, no pet.) (mem. op.).

It is not uncommon to see a severance ordered after the trial court grants a partial summary judgment. *See Duncan,* 28 S.W.3d at 710 ("This court has seen an increasing number of severances ordered after the granting of a partial summary judgment."). However, severance of the portion of a lawsuit subject to a partial summary judgment is not proper when it amounts to the splitting of a single cause of action. *See Duncan,* 28 S.W.3d at 710. This in no way affects the trial court's ruling on the motion for summary judgment, it merely requires the parties to wait for a final judgment before filing an appeal. *See Nicor Exploration Co.,* 911 S.W.2d at 482–83. The partial summary judgment may be appealed when, but not before, it is merged into a final judgment disposing of the whole case. *See id.*; *see also Rutherford* 601 S.W.2d at 443.

## C. Discussion

Because it is dispositive of our analysis of this claim, we first address whether the trial court improperly severed a cause of action into two separate suits.[5] To determine whether the trial court abused its discretion by severing claims subject to its partial summary judgment order, we must first determine which claims were severed and which claims remain before the trial court.[6] The trial court granted summary judgment explicitly

---

[5] The severance order, included in the trial court's order granting summary judgment, stated that "[t]he [c]court hereby SEVERS the claims on which judgment is granted above from the remainder of the case, except as otherwise provided above." This Order therefore constitutes a final and appealable judgment."

[6] To determine the current posture of the case, we review the live pleadings of the parties and the trial court's judgment on Dr. Chowdary's partial motion for summary judgment. The appellate record

finding Dr. Ozcelebi liable to Dr. Chowdary for a breach of fiduciary duty and contractual damages; thus, implicitly finding Dr. Ozcelebi breached the contract and Dr. Chowdary did not.[7] The trial court's order stated, in part, that:

> That [Dr. Ozcelebi] breached fiduciary duties owed to VGC as his employer. This is a declaratory judgment, and the issue of damages resulting from such breach will be carried with the remainder of the case.
>
> [Dr. Ozcelebi] owes $250,000 to VGC as a minimum amount due for breach of contract, plus prejudgment interest in the maximum amount provided by law, plus attorney[']s fees. . . . Attorney's fees are recoverable on this claim, and the [c]ourt enters a declaratory judgment that they shall be awarded. The amount of attorney's fees at this time be carried with the remainder of the case, . . . .
>
> That [Dr. Ozcelebi] contractually agreed to and owes further damages to VGC for violating the non-compete agreement regarding Hidalgo and Starr Counties of $240,000—payable and accrued in $10,000 installments each month for 24 months for violating the non-compete provision—in the event that the [c]ourt or jury finds that Doctor Ozcelebi "voluntarily" terminated the Agreement with VGC.[8]

Still pending before the trial court are Dr. Chowdary's claims for consequential damages, mental anguish damages, exemplary damages, and attorneys' fees, Dr. Ozcelebi's

---

indicates that Dr. Chowdary's live pleadings consist of his original petition, his first supplemental petition, his second supplemental petition his original answer to Dr. Ozcelebi's counterclaims, and his "clarification of pleadings, including nonsuit of certain claims." Dr. Ozcelebi's live pleadings consist of his fifth amended petition and counterclaims, his seventh amended original answer, his supplemental affirmative defenses, his second supplemental affirmative defenses, and his third supplemental affirmative defenses.

[7] Because the trial court granted summary judgment on specific grounds, we look only to those grounds enumerated in the judgment on appeal. *See State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex. 1993). We do not imply any finding not specifically included in the trial court's judgment. *See Great-Ness Prof. Srvs., Inc. v. First Nat'l Bank of Louisville,* 704 S.W.2d 916, 918 (Tex. App.—Houston [14th Dist.] 1986, no writ); *see also 301 White Oak Ranch, Ltd. v. Oaks of Trinity Homeowner's Assn.,* No. 13-14-00383-CV, 2015 WL 5321281, at *2 (Tex. App.—Corpus Christi Sept. 10, 2015, no pet. h.) (mem. op.) (recognizing that the "system of appellate review, as well as judicial economy, is better served when we only consider those summary judgment issues contemplated and ruled on by the trial court").

[8] By the trial court's supplemental order, it found "as a matter of law that Fatih Ozcelebi voluntarily terminated his Employment Agreement with VGC, and it grants summary judgment on that issue."

contractual defenses, including the contractual defense of rescission, and Dr. Ozcelebi's assault, invasion of privacy, fraud, and malicious prosecution counterclaims.

The trial court severed the implicit finding of liability and the explicit finding of contractual damages on Dr. Chowdary's breach of contract claim from the remaining alleged damages and fees and further split a determination of liability on Dr. Chowdary's breach of fiduciary duty claim from the damages, if any, to be awarded. *See Pierce,* 329 S.W.2d at 79 & n.1; *Dalisa,* 81 S.W.3d at 880; *Duncan,* 28 S.W.3d at 710. The current judgment would entitle Dr. Chowdary to recover $490,000 plus prejudgment interest pursuant to the liquidated damage provision and the non-compete provision, and a subsequent judgment would entitle Dr. Chowdary, if at all, to consequential damages, mental anguish damages, exemplary damages, and attorneys' fees, plus prejudgment interest pursuant to the same contract and the same contract dispute. Additionally, the severance order divided Dr. Ozcelebi's contractual defenses, including his equitable pleading for contractual rescission, from the underlying breach of contract case. And the trial court's order severed Dr. Chowdary's breach of fiduciary duty cause of action into two separate suits.

This constitutes a clear example of a severance order splitting a cause of action: the liability determination and one measure of damages of Dr. Chowdary's breach of contract claim are before us and Dr. Chowdary's pending claim for consequential damages, attorney's fees, and Dr. Ozcelebi's defenses to the same remain pending before the trial court. *See Pierce,* 329 S.W.2d at 79 & n.1; *Dalisa,* 81 S.W.3d at 879–80; *Duncan,* 28 S.W.3d at 710. Additionally, the trial court divided Dr. Chowdary's breach of

fiduciary duty claim when it separated its liability determination from potential damages. The severance created two independent lawsuits which will have two separate final and appealable judgments and two separate appeals. *See Van Dyke,* 697 S.W.2d at 383; *Beckham Grp., P.C. v. Synder,* 315 S.W.3d 244, 245 (Tex. App.—Dallas 2010, no pet.).

Not only does this result create judicial inefficiency, it also prevents meaningful appellate review. *See Guar. Fed.,* 793 S.W.2d at 658. The piecemeal litigation created as a result of the severance order prevents this Court from effectively reviewing the trial court's judgments on liability and damages because they are contained in separate lawsuits. *See id.* For instance, should Dr. Ozcelebi later appeal the trial court's entry of attorneys' fees against him on the breach of contract claim, we would have no ability to determine whether the fee award was correct and would be limited to reviewing the amount of attorneys' fees only. Further, Dr. Ozcelebi would be prevented from having this Court review the merits of his contractual defenses, including recission, when determining Dr. Chowdary's breach of contract claim because they would be subject to a separate appeal. Such a result is not in the interest of justice or convenience and is contrary to principles of judicial economy. *See id.*

The trial court improperly divided Dr. Chowdary's breach of contract cause of action into two separate lawsuits when a single suit would have sufficed.[9] *See Pierce,*

---

[9] Dr. Chowdary contends that Dr. Ozcelebi requested the severance and therefore, under the theory of "invited error" cannot now complain of the severance on appeal. *See Tittizer v. Union Gas Corp.,* 171 S.W.3d 857, 862 (Tex. 2005) (recognizing that "a party cannot complain on appeal that the trial court took a specific action that the complaining party requested, a doctrine commonly referred to as the 'invited error' doctrine"). Dr. Chowdary did not cite to the record in support of this contention, and after a review of the record this Court found no instance in which Dr. Ozcelebi requested a severance. In fact, Dr. Ozcelebi repeatedly contended in his motion for new trial and other post judgment filings that the severance was granted in error, and the proposed order, submitted by Dr. Chowdary, contained the severance provision.

329 S.W.2d at 79 & n.1; *Dalisa,* 81 S.W.3d at 879*; Pustejovsky,* 35 S.W.3d 647. It also improperly divided Dr. Chowdary's breach of fiduciary duty cause of action. We therefore determine that the trial court abused its discretion when it severed the determination of liability and contractual damages on the underlying breach of contract cause of action from the remainder of the alleged claims for breach of contract damages and attorneys' fees, Dr. Ozcelebi's defenses to the same, and the breach of fiduciary duty claim from any alleged damages. *See Pierce,* 329 S.W.2d at 79 & n.1; *Dalisa,* 81 S.W.3d at 880; *Duncan,* 28 S.W.3d at 710; *see also* TEX. R. APP. P. 47.1. We do not address the merits of Dr. Ozcelebi's appeal because we find that the trial court improperly severed a cause of action, and therefore this matter is not ripe for our review. *See Duncan,* 28 S.W.3d at 708–09.

We sustain Dr. Ozcelebi's ninth issue. Having determined severance in the court below was improper, we do not reach the remaining issues. *See* TEX. R. APP. P. 47.1; *Nicor Exploration Co.,* 911 S.W.2d at 482–83.

### IV. CONCLUSION

The order severing the trial court's partial summary judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
15th day of October, 2015.

13