# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00570-CV

---

### In re AJT Industries, LLC d/b/a Prestige Builders

---

### ORIGINAL PROCEEDING FROM TRAVIS COUNTY

---

## MEMORANDUM OPINION

Relator AJT Industries, LLC d/b/a Prestige Builders filed a petition for writ of mandamus challenging the trial court's "Order Granting Bifurcation of Third-Partys [sic] Gonzalez Iron Works, Capital Iron Works and DB Construction Austin LLC" (collectively, "Gonzalez Third Parties"). Prestige contends that the trial court committed a clear abuse of discretion for which there is no adequate appellate remedy by ordering Prestige's claims against the Gonzalez Third Parties to be bifurcated and tried separately from both the claims brought against Prestige by the real party in interest, Escondera Condominium Owners Association, Inc., and the third-party claims Prestige has filed against other third-party defendants. For the reasons explained below, we agree that the trial court abused its discretion by effectively ordering a severance of Prestige's claims against the Gonzalez Third Parties, and we conditionally grant mandamus relief from the challenged order.

## BACKGROUND

The underlying lawsuit is a construction-defect lawsuit. Prestige was engaged to act as the general contractor for a project to repair and modify condominium units belonging to

Escondera. In March 2022, Escondera sued Prestige, alleging various construction defects and liability theories for alleged water intrusion at the condominium complex. The alleged construction defects include defects related to grading and drainage, the building envelope and cladding, the roof, the rear balconies and roof junctions, and the retention pond. Escondera alleged claims against Prestige for negligence, breach of implied warranty, negligent misrepresentation, and DTPA violations.

Prestige answered and denied liability for all claims. Prestige expressly reserved, pursuant to Chapters 32 and 33 of the Texas Civil Practice and Remedies Code, "the statutory right to contribution or credit with respect to any other persons or organizations which are or may be made parties to this cause or any settling persons or organizations." *See generally* Tex. Civ. Prac. & Rem. Code §§ 32.001-.003 (contribution); *id.* §§ 33.001-.017 (proportionate responsibility). Prestige also reserved "the right to submit issues to the jury inquiring of the alleged negligence, proportionate share of responsibility, or alleged wrongdoing of all current or future parties or responsible third parties to this cause and/or settling party, including Plaintiff."

Prestige seeks recovery against several of its subcontractors under contribution, negligence, and breach-of-warranties theories. In its July 2023 first amended third-party petition, Prestige brought claims against subcontractors Umbrella Tech, Incorporated; Mission Plastering, Inc.; and Armored Star, Inc. ("Initial Third-Party Defendants").[1] Each third-party defendant performed labor in connection with the construction at the Escondera project. Mission Plastering

---

[1] Prestige also filed third-party claims against Albert Arellano d/b/a A.J. EZ Lath & Plaster, but this subcontractor has not made an appearance in the case. Arellano was a stucco subcontractor for two buildings at the Escondera project.

2

was a stucco subcontractor for five buildings at the Escondera project; Umbrella Tech built and installed roofing components; and Armored Star provided waterproofing.

On March 27, 2024, Prestige filed its second amended third-party petition and added additional subcontractors, the Gonzalez Third Parties, as third-party defendants.[2] Gonzalez Iron Works and Capitol Iron Works installed the bolt attachments for the railings and spiral stairs that may have contributed to alleged problems with the decks at the project. DB Construction installed the concrete topping and T metal at the decks that may also have contributed to the alleged problems with the decks at the property.

After the Gonzalez Third Parties were served on June 24, they collectively answered on July 19 and moved for a continuance on July 23, arguing that under the docket-control order, they would be unable to serve any party requests for discovery because the discovery deadline was August 9.[3] They also argued that they would "be prejudicially and unjustly denied the opportunity to designate experts, and cross-examine experts currently designated by other parties, as the deadline for expert designations expired on May 20, 2024." The Gonzalez Third Parties sought a 180-day delay of the September 9 trial date to give them adequate time to prepare for trial.

Escondera opposed the Gonzalez Third Parties' request for a continuance and alternatively requested that Prestige's claims against the Gonzalez Third Parties be bifurcated.

---

[2] Prestige also sued Builders First Source – Texas Installed Sales, LLC in this petition but subsequently nonsuited that company.

[3] Prestige's counsel explained at the August 13 hearing that when his process servers were unable to serve the Gonzalez Third Parties within a short period of time, he filed a motion to seek substituted service less than a month after the third-party petition was filed, which was granted. He noted that Prestige's third-party petition was filed before the docket-control order was signed and that no party objected to either the timely joinder or Prestige's motion for substituted service.

3

With regard to the request for continuance of the trial setting, Escondera argued that it would be significantly prejudiced by continuing the trial date because it does not have the funds to make the necessary repairs to its damaged property until the case is resolved, and the property's condition continues to deteriorate with the passage of time. It further argued that it was already incurring trial-preparation costs for the upcoming September trial date and would be prejudiced if it was forced to reschedule. Escondera also expressed concern about Prestige's diligence, contending that Prestige had failed to timely serve the Gonzalez Third Parties.[4]

In the alternative, in the event that the trial court concluded that additional time would be required to complete third-party discovery, Escondera moved to have Prestige's third-party claims against the Gonzalez Third Parties "bifurcated," arguing that Texas Rule of Civil Procedure 174 allows the court to order separate trials "in furtherance of convenience or to avoid prejudice." Escondera argued that both judicial efficiency and avoidance of prejudice favor bifurcation. It argued that bifurcation would avoid significant prejudice to it by ensuring its claims are heard in a timely manner and that there would be no prejudice to Prestige by having its claims bifurcated because indemnity claims do not arise under Texas law until a judgment is owed. It

_____

[4] In September 2023, after issues with Prestige's prior counsel's management of the case, the trial court allowed Prestige's prior counsel to withdraw and ordered Prestige to obtain new counsel in two weeks, and within two weeks after that date, to confer with Escondera's and the Initial Third Parties' counsel about the case status, scheduling order, depositions, and mediation. On November 15, 2023, the trial court signed a docket-control order setting a March 18, 2024 trial date. On February 15, 2024, third-party defendant Mission Plastering filed a motion to continue the March 2024 trial date because of a large document production by Prestige. After an in-person hearing on February 21, the trial court granted the motion for continuance. On April 16, 2024, the trial court signed both the order granting the motion for continuance and resetting the trial date for the week of September 9, 2024, and the current docket-control order, which set the new joinder deadline for April 1, 2024.

asserted that Prestige first must be found liable to Escondera before any finding could be made about the liability of the third-party defendants.

Prestige objected and responded to Escondera's motion to bifurcate, arguing that bifurcation was both prejudicial and judicially inefficient because Prestige's claims against the subcontractor third-party defendants sound in tort and thus are subject to apportionment under Chapter 33, and Prestige also alleges contribution claims under Chapter 32 against all third-party defendants.[5] In addition, Prestige argued that its claims against the third-party defendants are interwoven with and rely upon the same testimony and other evidence as Escondera's claims against Prestige. Prestige further contended that bifurcating the trial would merely result in an interlocutory award by the jury in the first phase of trial and the return of the jury at some unknown point in the future for the second phase of trial before Escondera would have a final judgment. Prestige also urged that separating the trials would result in duplicative trials with all the same witnesses needed to testify twice to the same facts and opinions.

On August 13, the trial court conducted a hearing on the Gonzalez Third Parties' motion for continuance and Escondera's alternative motion for bifurcation. At the hearing, the Initial Third-Party Defendants orally joined Prestige's objection and response to Escondera's motion to bifurcate. The Gonzalez Third Parties did not take a position on the motion to bifurcate, but their counsel noted her concern that if the trial date was not continued as to all parties, she would be unable to cross-examine witnesses on the stand during the trial of the other parties.

---

[5] Prestige noted that it reserves argument on whether an indemnity claim would negate prejudice to Prestige because it has not asserted any indemnity claims and that Escondera's point about Prestige's claims against the third-party defendants not arising until Prestige is found liable to Escondera is thus moot.

During discussion about when Prestige filed its third-party claims against the Gonzalez Third Parties, Mission Plastering's counsel explained that he had taken the lead on getting the docket-control order in place and that the joinder deadline was agreed to by all parties, including Escondera. He further stated that the wording about service by that date was in the form order but was not what was discussed amongst the parties: "[W]e all knew sitting there that there was no way he was going to be able to serve anybody by the 1st because we were doing this DCO just in about – right up against the 1st." He further explained that the intent was not to require parties to file claims against any new parties and get them served by April 1; instead, it was to provide a new joinder deadline by which both Escondera and Prestige could join new parties, which they did.

All of the various Initial Third-Party Defendants' attorneys argued against separating the trial of the Gonzalez Third Parties from the trial of Prestige and the Initial Third-Party Defendants. Prestige's counsel argued that bifurcation, which means the same jury hears both phases of the case, does not make sense in this situation because it would result in an interlocutory judgment until the second phase of the trial was over. Prestige's counsel and all of the Initial Third-Party Defendants' attorneys pointed out that all the claims were intertwined and that separate trials (whether as a result of a bifurcation as requested by Escondera or a severance) would be untenable under Chapter 33 because the jury would be asked to apportion responsibility among all the defendants and third-party defendants, including the Gonzalez Third Parties, at the first trial.

The trial court granted Escondera's request for bifurcation and ordered the bifurcation of Prestige's third-party claims against the Gonzalez Third Parties. However, the trial court acknowledged on the record that the second phase of the trial "won't be heard by the same

6

jury." The trial court stated on the record that the September 9, 2024 trial date remained in effect for the rest of the parties.

Prestige subsequently filed its petition for writ of mandamus and an emergency motion for temporary stay of the trial set for September 9, 2024. *See* Tex. R. App. P. 52.1; *id.* R. 52.10(a). After considering the responses of the Initial Third-Party Defendants and the Gonzalez Third Parties, who join in Prestige's petition for writ of mandamus and emergency motion, and Escondera's objection to Prestige's emergency motion, we granted the motion and stayed the September 9, 2024 trial, pending further order of this Court. *See id.* R. 52.10(b).

## ANALYSIS

Mandamus relief is appropriate when the relator demonstrates a clear abuse of discretion and has no adequate remedy by appeal. *In re USAA Gen. Indem. Co.*, 629 S.W.3d 878, 883 (Tex. 2021) (orig. proceeding). "A trial court has no 'discretion' in determining what the law is or applying the law to the facts," and "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *In re United Fire Lloyds*, 327 S.W.3d 250, 253-54 (Tex. App.—San Antonio 2010, orig. proceeding) (quoting *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding)). Prestige contends that mandamus is appropriate because (1) the trial court clearly abused its discretion by bifurcating Prestige's claims against the Gonzalez Third Parties in violation of Chapter 33's proportionate-responsibility scheme, causing prejudice and inconvenience in violation of Rule 174, and (2) the trial court's error cannot be adequately rectified on appeal because proceeding to trial would defeat Prestige's substantive right to present the complete set of intertwined facts and issues relevant to its third-party claims to one

factfinder in one proceeding and have that factfinder determine the proportionate responsibility of all responsible parties.

## I. The trial court clearly abused its discretion by bifurcating Prestige's claims against the Gonzalez Third Parties.

We analyze the trial court's potentially erroneous grant of bifurcation as a legal conclusion to be reviewed with limited deference to the trial court. *See Walker*, 827 S.W.2d at 840 (describing how to analyze trial court's interpretation of legal principles).

Severance and bifurcation are distinct trial procedures. *In re Travelers Lloyds of Tex. Ins. Co.*, 273 S.W.3d 368, 373 (Tex. App.—San Antonio 2008, orig. proceeding) (citing *Hall v. City of Austin*, 450 S.W.2d 836, 837-38 (Tex. 1970)). A severance divides the lawsuit into two or more separate and independent causes. *Hall*, 450 S.W.2d at 837-38; *see also* Tex. R. Civ. P. 41 ("Any claim against a party may be severed and proceeded with separately."). When a trial court severs a case, "a judgment which disposes of all parties and issues in one of the severed causes is final and appealable." *Hall*, 450 S.W.2d at 838. "An order for bifurcation, or separate trials, leaves the lawsuit intact but enables the court to hear and determine one or more issues without trying all controverted issues at the same time." *In re Travelers Lloyds*, 273 S.W.3d at 373 (citing *Hall*, 450 S.W.2d at 838). "The order entered at the conclusion of a separate trial is often interlocutory, because no final and appealable judgment can properly be rendered until all of the controlling issues have been tried and decided." *Hall*, 450 S.W.2d at 838.

In other words, a "bifurcated trial is *one trial* in which one jury decides multiple questions in different phases," with the second phase of trial being dependent on the resolution of the first trial. *In re USAA Gen. Indem. Co.*, 629 S.W.3d at 887-88. However, as the trial court acknowledged on the record at the hearing, although it was nominally granting the relief of

8

"bifurcation" that Escondera requested, Prestige's claims against the Gonzalez Third Parties "won't be heard by the same jury."[6] Thus, Prestige and the third-party defendants contend, the trial court's order actually requires two independent trials of the potentially responsible parties in contravention of Chapter 33's proportionate-responsibility scheme. We agree that although Escondera moved for bifurcation, not severance, and the trial court's order refers to "bifurcation," the trial court's order did not separate the case into two trial phases before the same jury. *See id.* at 882 n.2 (concluding that even though agreed motion and trial court's order referred to bifurcation, trial court's order did not bifurcate case; instead, it required independent trials). In effect, by requiring an independent trial with a different jury of Prestige's claims against the Gonzalez Third Parties, the trial court severed those claims from the rest of the case. *See id.*

While Texas Rule of Civil Procedure 174(b) allows the trial court "in furtherance of convenience or to avoid prejudice" to "order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues," Prestige and the third-party defendants contend that this Rule must be read in conjunction with the requirements of Chapter 33 of the Texas Civil Practice and Remedies Code.[7] Prestige and the third-party defendants contend that because Escondera's claims against Prestige sound in tort, and Prestige has brought claims

---

[6] After some discussion by the parties about the distinction between bifurcating a trial and severing Prestige's claims into an independent suit, the trial court stated, "I think I'm bound to rule only [on] what has been asked for. And the plaintiff clearly used the word "bifurcate." So I suppose some other judge somewhere is going to determine what the word 'bifurcate' means."

[7] Because the controlling reasons for a trial court to grant a severance are to do justice, avoid prejudice, and further convenience, *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 693 (Tex. 2007), we address the parties' arguments about convenience and prejudice even though they are framed in terms of Rule 174(b).

sounding in tort and contribution claims against the third-party defendants, Chapter 33's proportionate-liability scheme requires that all alleged tortfeasors must be tried together. *See* Tex. Civ. Prac. & Rem. Code § 33.002 (establishing applicability to tort and DTPA claims "in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought").

### A. The trial court's order violates Chapter 33's proportionate-liability scheme.

"Chapter 33 expresses the Legislature's intent to hold defendants responsible for only their own conduct." *MCI Sales & Serv., Inc. v. Hinton*, 329 S.W.3d 475, 505 (Tex. 2010). The statute's "purpose is to hold each person 'responsible for [the person's] own conduct causing injury.'" *Id.* (quoting *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 690 (Tex. 2007)). "This is consistent with a fundamental tenet of tort law that an entity's liability arises from its own injury-causing conduct." *Duenez*, 237 S.W.3d at 690.

Chapter 33 establishes a mandatory framework for apportioning damages:

> The trier of fact, as to each cause of action asserted, shall determine the percentage of responsibility, . . . for [each claimant, defendant, settling person, and responsible third party who has been joined under Section 33.004] with respect to each person's causing or contributing cause in any way the harm for which recovery of damages is sought . . . .

Tex. Civ. Prac. & Rem. Code § 33.003(a). In *Duenez*, the Texas Supreme Court held that "[t]his statutory mandate is not discretionary; failing to correctly apply the law is an abuse of discretion." 237 S.W.3d at 694. *Duenez* involved a car accident caused by an intoxicated driver. The injured parties sued the alcohol provider. *Id.* at 682. The trial court severed the alcohol provider's cross-claim against the intoxicated driver, which named the driver as a responsible third-party and

a contribution defendant, from the injured parties' suit against the alcohol provider. *Id.* at 683. After a jury trial resulting in a $35 million verdict against the alcohol provider, the supreme court examined the propriety of the severance in conjunction with the language of Chapter 33 and concluded that the trial court erred by severing the cross-claim. *Id.* at 693-94. The court held that the alcohol provider "was entitled to a charge that included a question to allow the trier of fact in a single trial to determine [the intoxicated driver's] proportionate share of responsibility," and thus, "[t]he trial court's severance constituted reversible error." *Id.* at 694 (reversing and remanding case for new trial).

When considering whether the trial court abused its discretion in severing Prestige's claims against the Gonzalez Third Parties, we examine the following elements:

> A claim is properly severable if (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues.

*Id.* at 693 (quoting *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990)). The controlling reasons for a severance are to do justice, avoid prejudice, and further convenience. *Id.*

In this case, similarly to the cross-claim in *Duenez*, Prestige's claims for contribution from the Gonzalez Third Parties cannot properly be severed. Those claims are "so interwoven with the remaining action that they involve the same facts and issues" that will be litigated in Escondera's suit against Prestige. In this multi-party construction-defect suit, the third-party defendants are all subcontractors who did various parts of the work that Escondera alleged has caused it damage, so there will be testimony regarding how the subcontractors' various

work assignments intersected and whose work caused the problems. Because the actions of all the subcontractors are the "facts and issues" that will be litigated, the trial court abused its discretion in severing Prestige's claims against the Gonzalez Third Parties. *Id.* at 694. As in *Duenez*, Prestige and all the third-party defendants are entitled to a charge that includes a question allowing the factfinder in a single trial to determine each of their proportionate share of responsibility.[8] *See id.*

### B. The trial court's order will cause inconvenience and prejudice.

Escondera does not directly address Prestige and the third-party defendants' argument that the trial court's severance of Prestige's claims against the Gonzalez Third Parties is improper and violates Chapter 33. Instead, Escondera incorrectly states that the bifurcation order will result in a single trial before a single jury. Escondera also focuses on the trial court's discretion to determine that bifurcation was appropriate "in furtherance of convenience and to avoid prejudice" and on the significant prejudice to Escondera that it asserts will result from the postponement of trial. Prestige and the third-party defendants contend that contrary to furthering convenience or avoiding prejudice, by requiring that Prestige's claims against the two sets of third-party defendants be brought in two different trials when those claims involve an intertwined set of facts, the same damages, and many of the same witnesses, the trial court's order will not only result in inconvenience and judicial inefficiency, but it will also prejudice Prestige's and the third-party defendants' substantive rights to have all responsible parties' percentage of fault tried together. If there are two trials, many of the same witnesses will be required to testify twice as to

---

[8] In addition to requiring the factfinder to apportion responsibility among each claimant, defendant, settling person, and responsible third party, Section 33.016 requires the factfinder to determine as a separate issue or finding of fact the percentage of responsibility for each contribution defendant for purposes of determining how much one defendant can recover from another defendant. Tex. Civ. Prac. & Rem. Code § 33.016(b), (c).

the same facts and opinions. Many common factual issues would have to be tried twice, including the cause of alleged damage where the work done by the Gonzalez Third Parties intersects with that of the Initial Third-Party Defendants. This duplication might require the Initial Third-Party Defendants to return for the second trial and present witnesses and experts in their defense a second time. In addition, many expert issues would have to be tried twice. Prestige explained that its claims against the Gonzalez Third Parties are based upon Escondera's allegations and Escondera's experts' opinions. Thus, Prestige argues, it is necessary for all third-party defendants to participate in one trial so that Escondera's experts can be cross-examined on their opinions. In addition, the Gonzalez Third Parties would likely have to testify at the first trial about the scope of their work, their methodology, and the quality of their work, all without their counsel present and without the ability to cross examine any of the other parties, which is potentially prejudicial to the Gonzalez Third Parties.

Prestige and the third-party defendants describe the substantial expense and judicial inefficiency that will result if there are two separate trials involving the same set of facts and the same damages, the same experts, and many of the same witnesses. But their larger concern is the prejudice to their substantial rights. They contend that they each have the right to have the complete set of intertwined facts and issues related to Prestige's third-party claims tried to one factfinder in one proceeding and to have one jury determine the proportionate responsibility of all responsible parties. *See In re Coppola*, 535 S.W.3d 506, 509 (Tex. 2017) (orig. proceeding) (describing "a litigant's significant and substantive right to allow the fact finder to determine the proportionate responsibility of all responsible parties"); *see also* Tex. Civ. Prac. & Rem. Code §§ 33.003(a), .016(b), (c). As a practical matter, trying one set of third-party defendants separately from another set of third-party defendants would potentially result in an inconsistent allocation of

13

responsibility in the two trials. In addition, discovery that will be conducted after the first trial could potentially change how the parties would present claims, defenses, and damages already considered in the first trial. We agree that the trial court abused its discretion by ordering severance of Prestige's claims against the Gonzalez Third Parties in light of the prejudice to the substantive rights of Prestige and the third-party defendants and the inconvenience and waste of resources that would result from two trials. *See In re State*, 355 S.W.3d 611, 614 (Tex. 2011) (orig. proceeding) (concluding that "the trial court abused its discretion by ordering a severance that, by breaking up a deeply interrelated set of legal and factual issues, prejudices the parties and causes great inconvenience").

## II. Prestige and the third-party defendants have no adequate remedy by appeal.

While an appellate remedy is not inadequate merely because it will result in additional expense or delay, a writ of mandamus is justified when parties stand to lose their substantial rights. *See Walker*, 827 S.W.2d at 840. In a similar context to this case, when considering the trial court's denial of a responsible-third-party designation under Section 33.004, the Texas Supreme Court concluded that "[a]llowing a case to proceed to trial despite erroneous denial of a responsible-third-party designation 'would skew the proceedings, potentially affect the outcome of the litigation, and compromise the presentation of [the relator's] defense in ways unlikely to be apparent in the appellate record.'" *In re Coppola*, 535 S.W.3d at 509 (quoting *In re CVR Energy, Inc.*, 500 S.W.3d 67, 81-82 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding [mand. denied])). Accordingly, the court held that ordinarily a relator need only establish a trial court's abuse of discretion to demonstrate entitlement to mandamus relief in that situation. *Id.* at 510. We conclude that the same principle applies here—Prestige and the third-party defendants

14

are entitled to have the complete set of intertwined facts and issues related to Prestige's third-party claims tried to one factfinder in one proceeding and to have one jury determine the proportionate responsibility of all responsible parties. Accordingly, Prestige and the third-party defendants have shown that they lack an adequate remedy by appeal from the trial court's erroneous severance. *See In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 465 (Tex. 2008) (orig. proceeding) ("The most frequent use we have made of mandamus relief involves cases in which the very act of proceeding to trial—regardless of the outcome—would defeat the substantive right involved."); *see also In re State*, 355 S.W.3d at 615 (concluding appellate remedy was inadequate "because of the enormous waste of judicial and public resources that compliance with the trial court's order would entail").

## CONCLUSION

We hold that the trial court abused its discretion by severing Prestige's claims against the Gonzalez Third Parties from the rest of the case. We conditionally grant the petition for writ of mandamus and direct the trial court to vacate its August 27, 2024 order. We are confident that the trial court will comply, and our writ will issue only if it does not.

_____

Gisela D. Triana, Justice

Before Justices Triana, Kelly, and Theofanis

Filed: December 18, 2024

15