ACCEPTED
12-17-00370-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
11/28/2017 9:32 AM
Pam Estes
CLERK

# CAUSE NO. 12-17-____-CV

In The

Court of Appeals

for the

Twelfth Appellate District

Tyler, Texas

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS

11/28/2017 9:32:59 AM

PAM ESTES
Clerk

IN RE:

RIGNEY CONSTRUCTION & DEVELOPMENT, LLC

# RELATOR'S RIGNEY CONSTRUCTION & DEVELOPMENT, LLC PETITION FOR WRIT OF MANDAMUS

TO THE HONORABLE JUDGES OF SAID COURT:

NOW COMES **RIGNEY CONSTRUCTION & DEVELOPMENT, LLC**, **Relator** in the above styled and numbered cause, and this its **PETITION FOR WRIT OF MANDAMUS**, demonstrating that the trial court's failure to transfer this cause to Brooks County pursuant to mandatory venue provisions contained in the parties' contract was error, along with its severance of claims interwoven claims arising from the same transactions and occurrences, and would show unto the Court as follows:

## STATEMENT OF NATURE OF CASE

1

This matter involves construction of a school in Brooks County. Real Party in Interest, Red Dot Building Systems, provided a quote to Relator which Relator utilized to bid to for the construction of the school for Real Party in Interest Brooks County I.S.D. Relator was awarded the contract with Real Party in Interest Brooks County I.S.D., and the contract they entered required all disputes be adjudicated in Brooks County. Relator then entered into a contract with Real Party in Interest Red Dot Building System, which also incorporated such forum selection clause. When, in violation of the contract, Red Dot Building System sued Relator in Henderson County, the trial court, the 173rd District Court of Henderson County, Hon. Dan Moore presiding, refused to transfer the case to Brooks County. Furthermore, to maintain improper venue in Henderson County, the trial court severed Relator's third party claims against Real Party Brooks County I.S.D., even though such claims arise out of the very same transactions and occurrences, and create the very real specter of inconsistent jury verdicts. Relator herein seeks relief from both determinations.

## STATEMENT OF JURISDICTION

This Court possesses jurisdiction pursuant to Tex. Civ. Prac. & Rem. Code §15.0642, which authorizes this Court to grant writs of mandamus to effectuate mandatory venue provisions. This Court also possesses jurisdiction pursuant to Tex. Gov't Code §22.221 which authorizes this Court to issue writs of mandamus

when a trial court has refused to enforce a forum selection clause, and when a trial court has improperly severed claims arising out of the same transactions and occurrence.

## ISSUES PRESENTED

Did the trial court err in refusing to enforce the mandatory venue provisions of parties' contract?

Did the trial court err in refusing to transfer venue, when the plaintiff failed to file a response to the defendant's motion?

Under the current mandatory venue statutes, is Brooks County I.S.D. entitled to be sued in Brooks County?

Can this Court grant mandamus relief because the trial court refused to enforce mandatory venue provisions, both contractual and statutory?

Does Texas follow policies and procedures to promote judicial economy?

Is a trial court authorized to sever claims against parties arising out of the same transaction and occurrence, merely to permit the plaintiff to effectuate its improper choice of forum?

Is a trial court authorized to sever contribution claims?

Can this Court grant mandamus relief, when a trial court improperly severs causes of action?

## STATEMENT OF FACTS

3

Much like the fabled case of *Jarndyce v. Jarndyce*, this matter constitutes the continuation of a long running controversy. See, In re Red Dot Building System, Inc., 504 S.W.3d 320 (Tex. 2016); In re Philadelphia Indemnity Ins. Co., 2017 WL 3224886 (Tex. App.--Tyler 2017, no pet). Such long history clearly demonstrates improper litigant and judicial attempts to maintain a controversy before it, when the controversy clearly belongs in another forum.

Brooks County I.S.D., Real Party in Interest (hereinafter referred to as "School District") desired the construction of a new building. After requesting proposals, Brooks County I.S.D. selected Rigney Construction & Development, Relator herein, to be the general contractor on the project. As a result, the parties entered a detailed contract containing plans and specifications. This contract also contained a forum selection clause, mandating venue for all disputes in Brooks County. Exh. A.

In order to perform this contract, Relator (hereinafter referred to as "General Contractor") entered into a contract with Real Party in Interest Red Dot Building Systems, for providing a steel building. Such contract incorporated the contract between School District and General Contractor, including its venue provision. Exh. B.

During the course of performance, Red Dot Building Systems (hereinafter referred to as "Subcontractor") claimed that School District's plans and

4

specifications were contained numerous errors, requiring them to perform additional work, and thus demanded additional compensation. When the architect who informally arbitrated the matter ruled against it, Subcontractor filed suit in Henderson. Exh. C. In response, General Contractor filed a motion to transfer venue, claiming that mandatory venue lay in Brooks County. Exh. D-1. Subcontractor failed to file a timely venue response as required by Tex. R. Civ. P. 87(1); the response was filed seven days before the hearing (instead of the mandated thirty). Exh. D-2. General Contractor expressly objected. Exh. D-3. Subcontractor never requested leave for late filing, and the trial court never granted leave.[1] As a result, Subcontract failed to satisfy its burden of demonstrating proper venue; indeed, the trial court had nothing before it which in any way supported Subcontractor's position. Nevertheless, the trial court refused to transfer the matter to Brook County. Exh. D-4.

At the hearing on the motion to transfer venue, the trial court specifically ordered General Contractor to file a third party petition against School District. The trial court further indicated that when General Contractor did so, it would transfer the matter to Brooks County. Exh. E, p. 15. Because such statement amounted to leave to file a third party claim against School District, General

---

[1]To the extent that the trial court granted leave, such leave amounted to an abuse of discretion, because Subcontractor completely failed to explain or introduce evidence why such pleading was tardy. See, e.g., In Interest of Z.W.C., 856 S.W.2d 281, 283 (Tex. App.--Fort Worth 1993, no writ) (trial court abused discretion by granting relief when no evidence was presented).

5

Contractor did so. (Additionally, this pleading asserted a counterclaim against Subcontractor). Exh. F. School District was duly served with citation and filed an answer.

Seeing its improper venue slipping away, and ignoring the fact that the trial court had orally granted leave, Subcontractor filed a motion to strike General Contractor's third party petition, claiming that General Contractor had failed to obtain leave. In the alternative, it sought to sever General Contractor's claims against School District, Exh. G, even though contribution claims cannot be severed.

In response, General Contractor filed a motion for leave to file a third party complaint. Exh. H-1. General Contractor subsequently filed a more detailed response to Subcontractor's motion to strike, pointing out that severance was improper because of the interwoven nature of the claims, and because claims for contribution were being asserted. Exh. H-2. In the meantime, School District filed an answer, seeking transfer of the case to Brooks County. Exh. I.

At the hearing on Subcontractor's Motion to Strike, no evidence was presented. The trial court claimed that General Contractor failed to request leave to file its third party petition, Exh. J-1, an assertion which is demonstrably false. Exh. H-1. The trial court expressly ignored its prior statement that it would transfer the case to Brooks County once School District was joined as party,

6

claiming it was a "brash statement" (whatever that means).  Exh. J-1.  Instead, in a blatant attempt to maintain a lawsuit which it knows[2] belongs in Brooks County, the trial court severed General Contractor's claims against School District, and transferred them to Brooks County.  However, the trial court maintained Subcontractor's claims against General Contractor before it.  Exh. J-2; Exh. J-3.

But the trial court was not authorized to sever such claims; contribution claims cannot be severed, and Subcontractor failed to satisfy the test necessary for severance.  Furthermore, such severance raises the specter of inconsistent verdicts, and wastes precious judicial resources.  Accordingly, General Contractor is requesting relief from this Court.

## SUMMARY OF ARGUMENT

Mandatory venue between School District and General Contractor lay in Brooks County, pursuant to the contract and the mandatory venue statutes.  Likewise, mandatory venue between General Contractor and Subcontractor lay in Brooks County pursuant to the contract as General Contractor plead in its original motion to transfer venue, especially since Subcontractor failed to file a timely venue response.  Accordingly, the trial court erred in failing to transfer venue to Brooks County, which warrants mandamus relief.

---

[2]For another example of completely tortured and legally incorrect reasoning by the trial court to maintain venue of the underlying lawsuit, please see this Court's initial opinion in In Re: Philadelphia Indemnity Ins. Co., Cause No. 12–17–00117–CV (Tex. App.--Tyler 2017, no pet.).

School District was entitled to venue in Brooks County, and its entitlement to such venue requires the entire case to be transferred there. Recognizing this, the trial court severed School District and returned it to whence it came, even though under Subcontractor's factual theory, School District caused its entire problems with deficient plans and specifications. But the trial court abused its discretion in doing so, because the interwoven requirement for severance was not satisfied, and because contribution claims cannot be severed from the main case. Accordingly, the trial court erred, warranting mandamus relief.

# ARGUMENT

[A] Mandatory Venue Lies in Brooks County

*{1} Parties Contractually Agreed to Venue in Brooks County*

School District and General Contractor entered into a contract concerning the construction of the school. The general conditions of the contract Article 13.1 provided as follows:

> Exclusive venue for any action arising out of the Project or the Contract Documents is in the state courts of the county in which the Owner's administrative offices are located. Exh. A, §13.1.

This provision is also incorporated into the contract between General Contractor and Subcontractor. Exh. B.

Subcontractor submitted its bid for its Pre-Engineered Metal Building scope

8

of work "per plans and specs", with only the listed deviations. Abolition of the venue provisions was not among them. Exh. B, p. 5. Subcontractor's bid not only incorporated the plans, but also in section 13120 of the "specifications", specifications which Subcontractor referenced in its bid. Exh. B-1. Part 1, 1.00(A) of said section incorporates the exclusive venue provision as part of Subcontractor's section and requirements. Since Subcontractor's bid was per plans and "specifications", Subcontractor incorporated such provisions, and now cannot deny that it is bound by the mandatory venue provision in Brooks County.

Under general principles of Texas contract law, separate terms may be incorporated by reference into a contract. Tribble & Stephens Co. v. RGM Constructors, L.P., 154 S.W.3d 639, 663 (Tex. App.--Houston [14th Dist.] 2004, pet. denied). "A contractual term is not rendered invalid merely because it exists in a document incorporated by reference." In re D. Wilson Constr. Co., 196 S.W.3d 774, 781 (Tex. 2006). Accordingly, the forum selection provision contained in the School District/General Contractor contract was incorporated into the contract between General Contractor and Subcontractor. See, Bancroft Life & Cas. ICC, Ltd. v. Davnic Ventures, L.P., 2013 WL 1222112 (S.D. Tex. 2013); Bancroft Life & Cas. ICC, Ltd. v. FFD Resources III, LLC, 2012 WL 2368302 (S.D. Tex. 2012).

Despite any prior hostility to such clauses, Texas' venue statutes now

provide:

> An action arising from a major transaction shall be brought in a county if the party against whom the action is brought has agreed in writing that a suit arising from the transaction may be brought in that county.

Tex. Civ. Prac. & Rem. Code §15.020(b). This statutory provision creates mandatory venue. In re Group 1 Realty, Inc., 441 S.W.3d 469, 472 (Tex. App.--El Paso 2014, no pet.). Indeed, this provision controls over all other possible venue provisions. In re Fisher, 433 S.W.3d 523, 532 (Tex. 2014). As applied herein, the trial court erred in failing to transfer venue.

Furthermore, the trial court erred in failing to transfer venue because Subcontractor failed to file a timely response (and thus it was not before the court). Because Subcontractor's response was not before the trial court, likewise its arguments and evidence were not properly before the trial court. Cf., Benchmark Bank v. Crowder, 919 S.W.2d 657, 663 (Tex. 1996)(late filed summary judgment evidence not before trial court unless leave granted); unlike the plea of privilege, a motion to transfer venue is not an evidentiary hearing. Tex. R. Civ. P. 87.3(b).

Moreover, the lack of a response requires a transfer of venue. After a defendant has filed a motion to transfer venue, the burden shifts to the plaintiff to present evidence the venue is proper. Tex. R. Civ. P. 87.2(a). If no evidence of proper venue has been presented, then the trial court must transfer venue. The best analogy is a no evidence motion for summary judgment; after a proper motion has

10

been filed, the non movant must file a response, or else the trial court must grant the motion. Lucio v. John G. and Marie Stella Kenedy Mem'l Foundation, 298 S.W.3d 663, 672 (Tex. App.--Corpus Christi 2009, pet. denied).

*{2} School District Entitled to Venue in Brooks County*

In addition to the mandatory venue provision in the contract, it is also undisputed that School District is a political subdivision. Pursuant to statute, mandatory venue lies in the county where a school district is located. Tex. Civ. Prac. & Rem. Code §15.0151. As applied to the case at bar, this is Brooks County. And because School District is entitled to venue in Brooks County, the entire case must be transferred there.

*{3} Mandamus Appropriate to Enforce Mandatory Venue*

Traditionally, in order to obtain mandamus relief, a relator was required to demonstrate an abuse of discretion for which he lacked an adequate remedy at law. Regardless of such traditional requirements, the Texas Legislature has expressly provided that a litigant is entitled to mandamus relief to enforce mandatory venue provisions. Tex. Civ. Prac. & Rem. Code §15.0642. Accordingly, General Contractor is entitled to a writ of mandamus herein if it proves entitlement to mandatory venue. Id. It has clearly done so. Accordingly, mandamus relief is proper herein.

Likewise, it is well settled that mandamus relief is proper to enforce forum

11

selection clauses. In re Zotec Partners, LLC, 353 S.W.3d 533, 536 (Tex. App.--San Antonio 2011, no pet.). "[A]n appellate remedy is inadequate when a trial court improperly refuses to enforce a forum selection clause because allowing the trial to go forward will vitiate and render illusory the subject matter of an appeal--i.e., trial in the proper forum." In re Lisa Laser USA, Inc., 310 S.W.3d 880, 883 (Tex. 2010). Such authority also authorizes this Court to transfer venue Brooks County.

[B] Trial Court Erred in Severing Cases

*{1} Texas Requires Judicial Economy*

Texas possesses a long standing policy of precluding multiplicity of suits. Iley v. Hughes, 158 Tex. 362, 311 S.W.2d 648, 651 (1958); State ex rel. City of Colleyville v. City of Hurst, 519 S.W.2d 698, 701 (Tex. Civ. App.--Fort Worth 1975, writ ref'd n.r.e.). Thus, a plaintiff can join all claims which he possesses against a defendant, Roberts v. Dunn, 426 S.W.2d 273, 275 (Tex. Civ. App.--Dallas 1968, no writ), and must do so if the claims arise from the same the same transaction or occurrence. Barr v. Resolution Trust Corp. ex rel. Sunbelt Federal Savings Ass'n, 837 S.W.2d 627, 630-31 (Tex. 1992). Likewise, a claimant can join several defendants into a single lawsuit, if the claims against them arise out of the same transaction or occurrence. Tex. R. Civ. P. 40. "Under the policy of our law to avoid a multiplicity of suits, the courts are liberal in allowing parties to be

12

joined when the joinder cannot result in prejudice." Roy Mitchell Contracting Co. v. Mueller Co., 326 S.W.2d 522, 525 (Tex. Civ. App.--Texarkana 1959, writ ref'd n.r.e.).

A severance divides one lawsuit into two. Kansas Univ. Endowment Ass'n v. King, 350 S.W.2d 11, 19 (Tex. 1961). Obviously, a severance runs counter to this policy of liberal joinder. As the Texas Supreme Court has recognized in the class action context:

> Piecemealing personal injury litigation by having separate juries decide the common and individual issues works a substantial change in the nature of the jury trial itself. Such a procedure forces two juries to evaluate discreet issues out of context and without knowledge of all the evidence. This procedure can also lead to inconsistent verdicts between class members. Moreover, the common and individual issues may be so interwoven that the litigants would have to present much of the same evidence to both juries, wasting the court's time and the litigants' money.

Southwestern Refining Co., Inc. v. Bernal, 22 S.W.3d 425, 440 (Tex. 2000).

*{2} Severance Improper Herein Because Claims Interwoven*

In order for a severance to be proper, ***each*** of the following must be demonstrated:

1. the controversy involves more than one cause of action;

2. the severed claim is one that would be the proper subject of a lawsuit if independently asserted; and

3. **the severed claim is not so interwoven with the remaining action that they involve the same facts and issues**.

F.F.P. Operating Partners, L.P. v. Duenez, 237 S.W.3d 680, 693 (Tex. 2007). Thus, the issue is whether General Contractor's claims against School District are interwoven with its claims against Subcontractor, and whether Subcontractor's claims against General Contractor are interwoven with General Contractor's claim against School District and Subcontractor; after all, these causes of action all arise from the same transaction.

Claims are interwoven if the same issues or the same issues must be decided in both cases. See, Coalition of Cities for Affordable Utility Rates v. Public Utility Commission of Texas, 798 S.W.2d 560, 564 (Tex. 1990), cert. denied, 499 U.S. 983, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991). Consequently, "Though the propriety of severance must be reviewed on a case-by-case basis, when the severed and unsevered claims arise out of the same transaction or occurrence and the facts necessary to show liability and damages with regard to all claims are roughly the same, **severance is generally improper**." Hummell v. Medaphis Physician Services Corp., 1998 WL 35277043 at 3 (Tex. App.--Corpus Christi 1998, no writ)(emphasis added).

In the case at bar, the following is just a partial list of identical issues which must be adjudicated in both the Henderson County case and the Brooks County

14

case:

> ➢ What ~~are~~ do the plans and specifications for the building in question require for the pre-engineered metal building?

> ➢ What were School District's obligations under these transactions?

> ➢ What were General Contractor's obligations under these transactions?

> ➢ What were Subcontractor's obligations under these transactions?

> ➢ What was actually delivered by Subcontractor?

> ➢ Did what was actually delivered by Subcontractor comply with the plans and specifications for these transactions?

> ➢ If what was actually delivered by Subcontractor did not comply with the plans and specifications for these transactions, was it Subcontractor's fault?

> ➢ If what was actually delivered by Subcontractor did not comply with the plans and specifications for these transactions, was it General Contractor's fault?

> ➢ If what was actually delivered by Subcontractor did not comply with the plans and specifications for these transactions, was it School District's fault?

> ➢ If what was actually delivered by Subcontractor complied with the plans and specifications for these transactions, what are the damages suffered?

> ➢ If what was actually delivered by Subcontractor

15

complied with the plans and specifications for these transactions, is School District responsible for the damages suffered?

➢ If what was actually delivered by Subcontractor did not comply with the plans and specifications for these transactions, what are the damages suffered?

➢ Is Subcontractor entitled to the approximately $100,000 retained by School District?

➢ Is General Contractor entitled to the approximately $100,000 retained by School District?

➢ Is School District entitled to the approximately $100,000 retained by it?

Likewise, the following is just a partial list of identical evidence which must be presented in both the Henderson County case and the Brooks County case:

➢ Copy of initial contract between School District and General Contractor (containing plans and specifications).

➢ Copy of contract between General Contractor and Subcontractor.

➢ Evidence of what was required under contract between School District and General Contractor.

➢ Evidence of what was required under contract between General Contractor and Subcontractor.

➢ Evidence of what was actually provided by Subcontractor.

➢ Pictures of what was actually provided by Subcontractor.

16

➢ Evidence of whether goods, materials and services provided by Subcontractor complied with contract between School District and General Contractor.

➢ Evidence of whether goods, materials and services provided by Subcontractor complied with contract between General Contractor and Subcontractor.

➢ Evidence of whether goods, materials and services provided by Subcontractor complied with the bidding requirements of the plans and specifications.

➢ The difference in value between goods, materials and services actually provided by Subcontractor, and those required in the contract between School District and General Contractor.

➢ The difference in value between goods, materials and services actually provided by Subcontractor, and those required in the contract between General Contractor and Subcontractor.

➢ The determination by the project's architect that Subcontractor was not entitled to any more monies.

➢ The determination by the project's architect that Subcontractor was obligated to provide certain items per plans and specifications.

Because of the overlap of evidence and issues, the trial court clearly abused its discretion in severing the claims. See, e.g., Levetz v. Sutton, 404 S.W.3d 798, 803 (Tex. App.--Dallas 2013, pet. denied); Bates v. First Nat. Bank of Waco, 502 S.W.2d 181, 185 (Tex. Civ. App.--Waco 1973, no writ).

In addition to similarity in issues and evidence, claims are interwoven if the severance may result in inconsistent verdicts. As one court has explained in the context of a medical malpractice case:

> In his fourth amended petition, [patient] alleged a continuous course of treatment constituting one continuous transaction, jointly producing an indivisible injury. Accordingly, the damages, if any, suffered by [patient] from the acts [patient] alleges in the severed claims, necessarily relate to and are intertwined with the damages he suffered from the alleged acts of the Harris County defendants. At a single trial of all claims, the finder of fact will be asked, for each entity concerning which there is evidence of some responsibility for [patient's] injuries, to assign a percentage of that responsibility; the percentage the finder of fact assigns to each such entity will necessarily affect, and be affected by, the percentage of responsibility it assigns to each of the other such entities. If the severance order were allowed to stand, and the case were to proceed as two separate suits, then that relationship would hold true only in the abstract, and not in practice. The severance of the claims into two separate suits would not, of itself, preclude each set of defendants from presenting evidence that the defendants on trial in the other suit were responsible for [patient's] injuries. In each of those suits, the facts and issues relating to each particular entity's liability for [patient's] injuries would be the same. Additionally, the respective triers of fact could each find that [patient] had been injured and that the parties over whom their respective courts had no jurisdiction were collectively 100 percent responsible for his injuries, with the nonsensical result that [patient] would recover nothing, despite those findings. On the other hand, the respective triers of fact could, instead, each decide that the parties over whom their respective courts did have jurisdiction were collectively 100 percent responsible for Jones's injuries, leading to the equally nonsensical result

18

that there would be, at least temporarily, two different judgments for full compensation for the same injuries to [patient].

If the severance order were allowed to stand, and the case were to proceed as two separate suits, it is, of course, by no means certain that either of these most extreme results we have suggested here, will actually be realized. However, any similar but less extreme result that might come to pass would remain nonsensical, and therefore unjust, for the same reason. Accordingly, the severance makes an unjust result, either over- or under-compensating [patient] for any injuries he may ultimately be shown to have suffered, not merely possible, but probable.

Jones v. Ray, 886 S.W.2d 817, 821-22 (Tex. App.--Houston [1st Dist.] 1994, no writ); see also, Santos v. Holzman, 2005 WL 167309 at 2 (Tex. App.--Corpus Christi 2005, pet. denied).

In the case at bar, the trial court's severance creates a real prospect of inconsistent verdicts. School District is retaining approximately $100,000 concerning the payment of claims relating to Subcontractor's work. In the Henderson County case, the jury may determine that Subcontractor is entitled to this money. However, in the Brooks County case, the jury may determine that School District is entitled to this money. Both cannot be correct. Accordingly, the severed claims are clearly interwoven, and the trial court erred in holding they were not. See, e.g., Madeksho v. Abraham, Watkins, Nichols & Friend, 112 S.W.3d 679, 690 (Tex. App.--Houston [14th Dist.] 2003, pet. denied); Jones v.

19

Ray, supra; see also, Pierce v. Blalack, 2017 WL 4320411 at 5 (Tex. App.--Texarkana 2017, no pet.)(denial of severance proper because severance would have created possibility of inconsistent verdicts).

Furthermore, General Contractor questions whether severance is even legitimately possible in this context. As previously noted, General Contractor has sued the School District for contribution; it was School District's plans and specifications which created any confusion and Subcontractor's demands in the initial instance. A litigant is entitled to have the same jury determine all parties who are responsible in the same lawsuit. F.F.P. Operating Partners, L.P. v. Duenez, supra. As a result, all claims for contribution must be tried in the main lawsuit; they cannot be severed and tried separately. BDO Seidman, LLP v. Bracewell & Patterson, LLP, 2003 WL 124829 at 2 (Tex. App.--Dallas 2003, pet. denied); Casa Ford, Inc. v. Ford Motor Co., 951 S.W.2d 865, 876 (Tex. App.--Texarkana 1997, pet. denied). Yet, the trial court's severance order does precisely this, mandating that two different juries determine who is responsible, based on the same evidence. As a result, it is improper. BDO Seidman, LLP v. Bracewell & Patterson, LLP, supra; Casa Ford, Inc. v. Ford Motor Co., supra.

As previously noted, one of the reasons for joinder is judicial economy, and as the Texas Supreme Court noted approximately thirty years ago, "The need for judicial economy has recently become more acute because the dockets of our trial

20

courts are overburdened." Wyatt v. Shaw Plumbing Co., 760 S.W.2d 245, 246-47 (Tex. 1988). Furthermore, such liberal joinder reduces costs, not only costs to the litigants but costs to the system. Atlas Roofing Co. v. Hall, 150 Tex. 611, 245 S.W.2d 477, 480 (1952). But it is impossible to argue that the trial court's severance accomplishes this goal. Instead of one lawsuit to resolve all the issues, now there are two, requiring two judges, two courtrooms, two court reporters, two district clerks, two juries, two trials, two judgments, and two appeals. The same evidence will need to be presented twice. The judicial system will be required to hear and consider the same evidence twice, increasing costs to everyone involved. Such a thwarting of the policies regarding joinder and severance shows the trial court's determination is wrong.

*{3} Mandamus Proper For Improper Severance*

Admittedly, mandamus will not issue "when the law provides another plain, adequate, and complete remedy." In re Tex. Dep't of Family & Protective Sevices, 210 S.W.3d 609, 613 (Tex. 2006). Furthermore, the issue of severance can be reviewed on appeal. In re Hoover, Bax & Slovacek, L.L.P., 6 S.W.3d 646, 649 (Tex. App.--El Paso 1999, no writ); Nicor Exploration Co. v. Florida Gas Transmission Co., 911 S.W.2d 479 (Tex. App.--Corpus Christi 1995, writ denied). However, appeal "is no remedy at all for the irreversible waste of judicial and public resources." In re Masonite Corp., 997 S. W.2d 194, 198 (Tex. 1999).

21

Accordingly, whether mandamus or appeal constitutes the appropriate remedy is not susceptible to rigid rules or formulas; rather, appellate courts must consider a range of both public and private interests in determining whether the benefits of mandamus review outweigh the detriments. In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 135-36 (Tex. 2004). Mandamus is appropriate to preserve important substantive and procedural rights from impairment or loss, and spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings. In re Essex Ins. Co., 450 S.W.3d 524, 528 (Tex. 2014); In re State, 355 S.W.3d 611, 615 (Tex. 2011); In re McAllen Medical Center, 275 S.W.3d 458, 465 (Tex. 2008).

When measured by such standards, improper granting a severance is reviewable by mandamus, and should be issued in the case at bar. As previously shown, because of the severance, two juries will be considering the same evidence. Based on the same evidence, the two juries will be deciding the same issues. Indeed, the two juries may reach inconsistent results. While the severance could be corrected on appeal, the time and effort spent on the initial cases would not be irreversible. Accordingly, mandamus relief is appropriate. In re Energy Resources Technology GOM, Inc., 2012 WL 4754006 at 2 (Tex. App.--Houston [14th Dist.] 2012, no pet.); In re Oncor Elec. Delivery Co., LLC, 355 S.W.3d 304, 305 (Tex. App.--Dallas 2011, no pet.); In re El Paso County Hospital Dist., 979 S.W.2d 10,

22

13 (Tex. App.--El Paso 1998, no writ); see also, In re Lewis Casing Crews, Inc., 2014 WL 3398170 at 5 (Tex. App.--Eastland 2014, no pet.); In re Altec Industries, Inc., 2012 WL 2469542 at 2 (Tex. App.--Waco 2012, no pet.). To paraphrase the Corpus Christi Court of Appeals, "If the [severance] is improperly granted, taxpayers, the court system, and the parties themselves will suffer a meaningless trial, only to have the results set aside on appeal. Such pleadings, motions, discovery, jury selection, evidence, trial and eventual judgment amount to a clear waste of judicial resources, causing the loss of rights, rendering mandamus proper." In re Estrada, 492 S.W.3d 42, 46 (Tex. App.--Corpus Christi 2016, no pet.).

Even prior to the Supreme Court's expansion in In re Prudential Ins. Co. of Am., supra, mandamus is appropriate if the error could not be properly presented in an appeal. Walker v. Packer, 827 S.W.2d 833, 837 (Tex.1992). In the case at bar, General Contractor would have difficulty demonstrating harm flowing from the severance. First, how would this Court receive the record of the Brooks County proceedings? Second, the severance would likely skew the proceedings, potentially affect the outcome of the litigation, and compromise the presentation of General Contractor's defense in ways unlikely to be apparent in the appellate record. For example, in the Henderson County proceeding, Subcontractor is likely to complain that School District's plans and specifications are improper, and

23

therefore it is entitled to additional compensation. Conversely, in the Brooks County lawsuit, School District will claim that the plans and specifications are proper, and therefore Subcontractor is not entitled to any compensation. The skewing of proceedings cannot be properly reflecting in appeal after a trial, warranting mandamus relief. In re Brokers Logistics, Ltd., 320 S.W.3d 402, 409 (Tex. App.--El Paso 2010, no pet.). As a result, mandamus relief is appropriate herein. See, e.g., In re Greyhound Lines, Inc., 2014 WL 1022329 at 4 (Tex. App.--Dallas 2014, no pet.)

The clear need for mandamus relief is further show by the trial court's conduct. As initially pointed out, General Contractor filed a motion for leave to file third party petition, but the trial court claimed no such motion was filed. But more importantly, at the initial hearing on the motion to transfer venue, the trial court specifically stated that if General Contractor joined School District as a party, the entire case would be transferred to Brooks County. Exh. E, p. 15. When confronted with such ruling, the trial court blithely ignored such ruling. Exh. J-1. A trial court is not free to blithely ignore its prior order. Mercedes-Benz Credit Corp. v. Rhyne, 925 S.W.2d 664, 666 (Tex. 1996).

## CONCLUSION AND PRAYER

Brooks County is clearly the appropriate forum for this lawsuit. The building in question was built there, and any defective performance or extra work

occurred there. Likewise, the contracts in this matter required lawsuits to be adjudicated in Brooks County, and the School District is statutory entitled to venue in Brooks County. In light of both the applicable facts and law, along with the prior history of this litigation, the trial court's orders herein compound the previous questionable rulings, ruling designed to maintain venue in an improper forum.

WHEREFORE, PREMISES CONSIDERED, **RIGNEY CONSTR-UCTION & DEVELOPMENT, LLC**, **Relator** in the above styled and numbered cause, respectfully prays that its Petition for Writ of Mandamus be **GRANTED**, that the order of severance be set aside, that this Court require this entire matter be transferred to Brooks County, and for all other and further relief, either at law or in equity, to which Relator shows itself justly entitled.

Respectfully submitted,

___/s/ John A. Rigney_____
John A. Rigney, State Bar Number: 24089356
4712 N. McColl Road, McAllen, Texas 78504
Tel. (956) 638-6421; Fax. (956) 618-2218
Email: RigneyLaw@aol.com

# CERTIFICATION

This is to certify that I have reviewed the above and foregoing petition. Each and every factual statement contained therein is true and correct. The factual statements are supported by the competent evidence, which are included in the exhibits attached to this petition. Furthermore, I hereby certify that all exhibits attached hereto are true and correct copies of the original.

___/s/ John A. Rigney_____

John A. Rigney, Attorney at Law

# CERTIFICATE OF NO EVIDENCE

This is to certify that no evidence was presented in support of the motion to strike and motion for severance, which form the basis of this mandamus proceeding.

\_\_\_/s/ John A. Rigney_____
John A. Rigney, Attorney at Law

# CERTIFICATE OF COMPLIANCE

This is to certify that the above and foregoing document was generated utilizing Word 2007, with 14 point font (12 point for footnotes) and contains 5779 words.

\_\_\_/s/ John A. Rigney_____
John A. Rigney, Attorney at Law

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served electronically and/or by facsimile transmission on the following, in accordance with TRAP 6.3, to-wit:

Carlos A. Balido, 10440 North Central Expressway
Meadow Park Tower, Suite 1500 Dallas, TX. 75231
Ph. (214) 749-4805 Fax (214) 760-1670 Email: carlos.balido@wbclawfirm.com

Jaime Garcia, 216 W. Village Blvd., Ste. 202
Laredo, TX 78041
Ph. (956) 717-1300 Fax (956) 717-0539 Email: jgarcia@jca-law.com

Judge Dan Moore, 100 E. Tyler
Suite 207
Athens, TX 75751

\_\_\_/s/ John A. Rigney_____
John A. Rigney, Attorney at Law