**Opinion issued December 22, 2022**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-21-00072-CV**

———————————

**JAMES P. ARTHUR, MARY ARTHUR, LEGONITE, INC., PARADISE LIVING, INC., AND ARTHUR HOLDINGS, L.P., Appellants**

**V.**

**JOHN MICHAEL RABORN, Appellee**

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-13849**

---

## MEMORANDUM OPINION

Appellants James P. Arthur, Mary Arthur, Legonite, Inc., Paradise Living, Inc., and Arthur Holdings, L.P. (collectively, "the Arthur parties") own a parcel of property that they use to operate an assisted living facility. The Arthur parties sued

their lender, Blackburne & Brown Mortgage Fund I, and appellee John Michael Raborn, the substitute trustee named in the deed of trust securing the property, and asserted claims for affirmative relief and injunctive relief. Raborn moved to dismiss the claims against him under Property Code section 51.007(a), arguing that he had a reasonable belief that he had been named as a party solely in his capacity as a trustee under a deed of trust. The trial court granted the motion and dismissed the Arthur parties' claims against Raborn without prejudice.

On appeal, the Arthur parties argue that the trial court erred by (1) using an unauthorized procedure to dismiss the claims against Raborn; (2) granting Raborn's motion to dismiss because the motion was substantively deficient and did not comply with any applicable laws or rules; and (3) denying the Arthur parties' motion to sever the claims against Raborn after granting his motion to dismiss. We affirm.

## Background

James and Mary Arthur purchased a parcel of property in southwest Houston sometime before 2006. At the time of purchase, a sixteen-unit condominium complex was located on the property. The Arthurs decided to renovate the building and convert it to an assisted living facility. To accomplish this goal, the Arthurs sought third-party financing and eventually entered into a loan agreement with Blackburne & Brown Mortgage Fund I ("Blackburne"). Raborn was named substitute trustee under the deed of trust securing the loan.

2

In late 2015, Raborn, as trustee and on behalf of Blackburne, sent letters to the Arthur parties notifying them that they had not complied with their payment obligations under the loan. Blackburne then initiated foreclosure proceedings. The Arthur parties sued Blackburne in 2016 and asserted claims for wrongful foreclosure. The trial court granted a temporary restraining order prohibiting foreclosure of the property.

After a court-supervised mediation, the Arthur parties and Blackburne entered into a Settlement Agreement in 2016. Among other rights and responsibilities, the Settlement Agreement set out a schedule for the Arthur parties' payment obligations to Blackburne. The parties also drafted a conditional Agreed Final Judgment that would only be filed with the court if the Arthur parties did not comply with the payment obligations set out in the Settlement Agreement. The Agreed Final Judgment authorized foreclosure of the property and provided different amounts of liquidated damages to Blackburne depending on when the Agreed Final Judgment was filed with the court.

The signing of the Settlement Agreement did not end the disputes between the Arthur parties and Blackburne. The Arthur parties alleged that they repeatedly requested an accounting and payoff balance statement from Blackburne so they could pay off the entire remaining obligation, but Blackburne did not cooperate.

3

After the Arthur parties did not make a payment required by the Settlement Agreement, Blackburne filed the Agreed Final Judgment with the trial court.

The Arthur parties filed additional lawsuits against Blackburne, including a suit filed in 2018 and a suit filed in 2019. Raborn was not named as a defendant in these lawsuits.

Blackburne initiated foreclosure proceedings against the property in November 2019. The Arthur parties obtained a temporary restraining order prohibiting sale of the property. They alleged that Blackburne disregarded this order and foreclosed anyway.

The Arthur parties filed the underlying lawsuit against Blackburne and Raborn in March 2020, after Blackburne initiated foreclosure proceedings against other properties owned by the Arthur parties.[1] In this lawsuit, the Arthur parties alleged that Raborn was acting as trustee for Blackburne. The Arthur parties asserted claims for breach of the Settlement Agreement, breach of the Agreed Final

---

[1] In their answer, Raborn and Blackburne alleged that a federal bankruptcy court in a prior proceeding involving Mary Arthur had ruled that her bankruptcy petition was part of a scheme "to delay, hinder, and defraud Blackburne," a secured creditor of Arthur. The bankruptcy court also ruled that Blackburne was "permitted to pursue its state law remedies" against several named properties in addition to the property that secured the original loan, "including foreclosure and/or eviction." The properties named in the bankruptcy court's order included the properties at issue in the underlying lawsuit.

Judgment, fraud, and wrongful foreclosure. The Arthur parties also sought injunctive relief enjoining the foreclosure sale of their other properties.

Raborn and Blackburne filed an answer.[2] Raborn pleaded that he was not a necessary party to the lawsuit because he was not a party to either the Settlement Agreement or the Agreed Final Judgment. Instead, Raborn had a reasonable belief that he had been sued solely in his capacity as substitute trustee under the deed of trust securing the property. Although this pleading was not verified, Raborn submitted an unsworn declaration in which he declared under penalty of perjury that the facts stated in the answer were true and correct.

In May 2020, Raborn filed a motion to dismiss the Arthur parties' claims against him pursuant to Property Code section 51.007. This statute sets out a dismissal procedure for trustees who are not necessary parties because they have been sued solely in their capacity as trustee under a deed of trust. *See* TEX. PROP. CODE § 51.007(a)–(d). Raborn argued that he properly alleged in his answer that he had a reasonable belief he had been sued solely in his capacity as trustee, and the Arthur parties failed to file a timely verified response rebutting that pleading. Raborn requested that the trial court dismiss the claims against him without prejudice.

---

[2] Blackburne also asserted affirmative claims for breach of contract and fraud against the Arthur parties.

5

The trial court granted Raborn's motion on July 13, 2020, and dismissed the Arthur parties' claims against him without prejudice.

The Arthur parties moved for reconsideration of the trial court's dismissal order. On December 8, 2020, the trial court denied the Arthur parties' motion for reconsideration.

Following the trial court's denial of the motion for reconsideration, the Arthur parties moved to sever their claims against Raborn into a separate lawsuit. At this time, the underlying proceeding had been consolidated with the Arthur parties' lawsuits against Blackburne filed in 2018 and 2019. The Arthur parties' claims against Blackburne in all three lawsuits, as well as Blackburne's claims against the Arthur parties in the underlying proceeding, all remained pending. Raborn opposed severance of the claims against him.

The trial court denied the Arthur parties' motion to sever on January 5, 2021. The Arthur parties filed a notice of appeal from this order, and the case was assigned appellate cause number 01-21-00072-CV. Raborn is the only appellee in this appeal.[3] Several months after this appeal was filed, the trial court signed a final

---

[3]   Because the trial court denied the Arthur parties' motion to sever and did not sever the claims against Raborn into a separate lawsuit, the July 13 dismissal order, the December 8 order denying reconsideration, and the January 5 order denying severance were not final judgments. *See In re Guardianship of Jones*, 629 S.W.3d 921, 924 (Tex. 2021) (per curiam) (stating that in cases in which judgment has been rendered without conventional trial on merits, judgment is not final unless it (1) actually disposes of all pending claims and parties, or (2) clearly and

judgment in the consolidated case. In the final judgment, the trial court dismissed the Arthur parties' claims against Blackburne and awarded Blackburne actual damages and sanctions.

## Dismissal of Claims Against Raborn

In their first issue, the Arthur parties argue that the trial court erred by dismissing the claims against Raborn because the court did not use either of the dismissal procedures authorized by the Rules of Civil Procedure: dismissal pursuant to Rule 91a or dismissal on a motion for summary judgment. In their second issue, the Arthur parties argue that Raborn's motion to dismiss was substantively defective and "did not comply with the applicable laws and rules."

---

unequivocally states that it finally disposes of all claims and parties, even if it does not actually do so). Generally, with a few mostly statutory exceptions, a party may take an appeal only from a final judgment. *Elec. Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 632 (Tex. 2021). When we receive a notice of appeal in a civil case before the trial court renders a final judgment, we may treat the case as a prematurely filed appeal and permit the defect to be cured. *Fusion Indus., LLC v. Edgardo Madrid & Assocs., LLC*, 624 S.W.3d 843, 849 (Tex. App.—El Paso 2021, no pet.); TEX. R. APP. P. 27.1(a). If the trial court renders a final judgment before we dismiss a prematurely filed notice of appeal, the jurisdictional defect is cured, and we treat the notice of appeal "as having been filed on the day of the trial court's final judgment." *Fusion Indus.*, 624 S.W.3d at 849. Here, the Arthur parties filed a notice of appeal from an interlocutory order. While this appeal has been pending, however, the trial court signed a final judgment on May 15, 2021, that disposes of all claims and all parties. We therefore deem the Arthur parties' premature notice of appeal as filed on the date of the final judgment, and we conclude that we have appellate jurisdiction over this appeal. *See id.* ("To the extent Fusion's notice of appeal was premature, the later rendition of a final judgment in the trial court cured any defect."); *Espalin v. Child.'s Med. Ctr. of Dallas*, 27 S.W.3d 675, 681 (Tex. App.—Dallas 2000, no pet.) ("[A] document filed in an attempt to appeal an interlocutory order that later becomes final serves to appeal the final judgment.").

7

### A.    *Standard of Review and Governing Law*

Property Code section 51.007(a) provides a procedural mechanism for a trustee under a deed of trust to seek dismissal from a lawsuit. *Cantor v. Wachovia Mortg., FSB*, 641 F. Supp. 2d 602, 611 (N.D. Tex. 2009). Pursuant to that section, a trustee named in a lawsuit "may plead in the answer that the trustee is not a necessary party by a verified denial stating the basis for the trustee's reasonable belief that the trustee was named as a party solely in the capacity as a trustee under a deed of trust, contract lien, or security instrument." TEX. PROP. CODE § 51.007(a); *Freezia v. IS Storage Venture, LLC*, 474 S.W.3d 379, 384 n.1 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Within 30 days after the trustee files the verified denial, a verified response is due from "all parties" to the lawsuit "setting forth all matters, whether in law or fact, that rebut the trustee's verified denial." TEX. PROP. CODE § 51.007(b); *Freezia*, 474 S.W.3d at 384 n.1. If a party does not have an objection or fails to file a timely verified response to the trustee's verified denial, "the trustee shall be dismissed from the suit or proceeding without prejudice." TEX. PROP. CODE § 51.007(c); *Freezia*, 474 S.W.3d at 384 n.1; *see WAMCO XXVIII, Ltd. v. Casa Grande Cotton Fin. Co.*, 314 F. Supp. 2d 655, 657 (N.D. Tex. 2004) (dismissing claims against substitute trustee under section 51.007 after plaintiff failed to file verified response to trustee's answer containing verified denial).

If a party files a timely verified response to the trustee's verified denial, the trial court shall set the matter for hearing. TEX. PROP. CODE § 51.007(d). "The court shall dismiss the trustee from the suit or proceeding without prejudice if the court determines that the trustee is not a necessary party." *Id.*

Whether a defendant is entitled to dismissal under the facts alleged is a legal question that we review de novo. *See In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021) (orig. proceeding) (considering dismissal under Rule of Civil Procedure 91a); *see also City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (per curiam) (stating that rulings pursuant to Rule 91a are reviewed de novo "because the availability of a remedy under the facts alleged is a question of law"); *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 768 (Tex. 2011) (stating that courts review de novo issues of statutory construction and "application of the law to undisputed facts in summary judgments").

## B.    Analysis

### 1.    Whether Raborn Used an Authorized Dismissal Procedure

In this case, the Arthur parties filed suit against Blackburne and Raborn on March 2, 2020, and asserted claims relating to foreclosure proceedings. The Arthur parties alleged in their original petition that Raborn represented Blackburne as its attorney and that Raborn was a trustee under a deed of trust. The allegations

described the Arthur parties' relationship with Blackburne, which dated back at least to 2006 and concerned a property in southwest Houston.

Specifically with respect to Raborn, the Arthur parties alleged that Blackburne, beginning in December 2015, "caused its co-Defendant Attorney John M. Raborn to start sending to Arthurs a series of letters alleging non-payment or late payment of mortgage and taxes to Harris County Tax Office." During a prior lawsuit that the Arthur parties initiated against Blackburne in 2016 related to attempts to foreclose on the property, Raborn represented Blackburne at court-ordered mediation. A later court-supervised mediation resulted in the Settlement Agreement and the conditional Agreed Final Judgment. The Arthur parties also alleged that after they obtained a temporary restraining order enjoining Blackburne from foreclosing on the property in 2019, Raborn informed the Arthur parties' counsel that "he would still proceed with the Restrained Foreclosure" and he did foreclose on the property.

The Arthur parties asserted four claims for affirmative relief: breach of the Settlement Agreement; breach of the Agreed Final Judgment; fraud or misrepresentation; and wrongful foreclosure of the property. The Arthur parties also sought injunctive relief to prohibit Blackburne and Raborn from foreclosing upon other properties owned by the Arthur parties.

On March 23, 2020, Blackburne and Raborn filed an answer and asserted counterclaims. In this filing, they alleged:

10

> To the extent there is dispute between the Arthur Parties and Blackburne that is not precluded by law and/or asserted defenses, Raborn is not a necessary party to this lawsuit. Raborn is not a party to the Settlement Agreement or Agreed Final Judgment. Raborn has a reasonable belief that he is named in this lawsuit solely in his capacity as a substitute trustee under the deed of trust dated February 16, 2016 that secured the promissory note dated February 16, 2016 that memorialized a loan by Blackburne to Arthur P. Holding, LP in the original principal amount of $1,225,000.00. That deed of trust gave Blackburne a security interest in the Beechnut Property. Upon Arthur P. Holdings, LP's failure to satisfy its obligations pursuant to the deed of trust and promissory note, Blackburne appointed Raborn as substitute trustee and directed him to foreclose the Beechnut Property. Ultimately, such foreclosure did not occur but the Beechnut Property was subsequently sold via a constable's sale pursuant to the Agreed Final Judgment. In addition, pursuant to section 51.007 of the Texas Property Code, a trustee shall not be liable for any good faith error resulting from reliance on any information in law or fact provided by the mortgagor or mortgagee. Similarly, a trustee may not be held to the obligations of a fiduciary of the mortgagor or mortgagee.

Although this denial was not verified, the answer was accompanied by an unsworn declaration from Raborn. Raborn declared, under penalty of perjury, that the facts stated in the answer were true and correct.

On May 15, 2020, more than 30 days after Raborn filed the denial contained in his answer, he moved to dismiss the Arthur parties' claims against him under Property Code section 51.007. Raborn argued that he was not a necessary party to the lawsuit and that he had been sued solely in his capacity as substitute trustee under the deed of trust securing the loan in favor of Blackburne. He further argued that the Arthur parties were required to file a verified response by April 22, 2020, but they failed to do so. He requested that the trial court dismiss the claims against him

11

without prejudice. The trial court granted Raborn's motion to dismiss, finding that the Arthur parties failed to file a timely verified response and that Raborn was named as a party to the lawsuit solely in his capacity as a trustee under a deed of trust.

On appeal, the Arthur parties argue that the trial court's dismissal of the claims against Raborn was improper in part because the court did not use a dismissal procedure authorized by the Rules of Civil Procedure, such as dismissal pursuant to Rule 91a or the summary judgment procedure. *See* TEX. R. CIV. P. 91a (setting out procedure for dismissal of claims on grounds that claims have no basis in law or fact); TEX. R. CIV. P. 166a (setting out procedure for traditional and no-evidence motions for summary judgment). The Arthur parties are correct that Raborn's motion to dismiss does not meet the procedural requirements of either Rule 91a or Rule 166a. However, Property Code section 51.007 sets out a procedure by which a trustee under a deed of trust may move for dismissal of certain claims asserted against him. *See* TEX. PROP. CODE § 51.007(a)–(d); *Cantor*, 641 F. Supp. 2d at 611; *Freezia*, 474 S.W.3d at 384 n.1.

The Arthur parties do not address section 51.007 in their brief or argue that Raborn's motion to dismiss does not meet the requirements of section 51.007. We therefore conclude that although Raborn did not move for dismissal of the claims against him pursuant to Rule 91a or the summary judgment procedure, he utilized a dismissal mechanism that is authorized under Texas law. *See* TEX. PROP. CODE

§ 51.007(a)–(d). The trial court, therefore, did not use an unauthorized procedure to dismiss the claims against Raborn.[4]

The Arthur parties also argue in their first issue that the motion to dismiss "was not properly before the trial court when the order to dismiss was signed by the trial judge." They point out that, in late June 2020, their counsel had filed a notice with the trial court that he would not be available for court proceedings until early August 2020 due to health reasons. They also point to an email from the trial court's coordinator stating that a hearing scheduled for July 13 had "been passed" and that the Arthur parties' counsel "will need to be present for the hearing." The trial court signed the order dismissing the claims against Raborn on July 13.

We first note that the email from the court coordinator, which was part of an exchange between the coordinator and Raborn, reflects the cause number for the 2019 case between the Arthur parties and Blackburne, not the 2020 case that also involved Raborn. At the time of this email exchange, the 2019 and 2020 cases had not been consolidated yet. Later emails reflected that the passed hearing was a status conference hearing for the 2019 case, a hearing which required the presence of the

---

[4]     The Arthur parties also argue that although Blackburne and Raborn's answer contained special exceptions, the trial court did not follow the procedure for granting special exceptions and instead dismissed Raborn from the lawsuit. The Arthur parties cite no authority requiring the trial court to rule on the special exceptions before ruling on Raborn's motion to dismiss. We further note that dismissal pursuant to section 51.007 is specifically required to be without prejudice. *See* TEX. PROP. CODE § 51.007(c)–(d).

13

Arthur parties' counsel. The hearing would be rescheduled once counsel was available.

Additionally, we note that section 51.007 only requires a hearing if the respondent "files a timely verified response to the trustee's verified denial." *See id.* § 51.007(d) (providing that under such circumstances "the matter shall be set for hearing"). The statute is silent about the necessity of a hearing when the respondent does not file a timely verified response. *Id.* § 51.007(c) ("If a party has no objection or fails to file a timely verified response to the trustee's verified denial, the trustee shall be dismissed from the suit or proceeding without prejudice."); *see Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325–26 (Tex. 2017) ("We presume the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen. In that vein, we take statutes as we find them and refrain from rewriting the Legislature's text.") (internal quotations and citations omitted). The Arthur parties did not file a timely verified response to Raborn's denial pleaded in his answer.

Because the Arthur parties did not file a verified response to Raborn's denial, the trial court was not statutorily required to hold a hearing on Raborn's motion to dismiss. We hold that the trial court did not use an unauthorized procedure when it dismissed the claims against Raborn pursuant to Property Code section 51.007.

We overrule the Arthur parties' first issue.

**2.** **Whether Raborn's Motion to Dismiss Was Substantively Deficient**

The Arthur parties argue that Raborn's motion to dismiss was substantively deficient because it was based on Raborn's "beliefs," which is not a sufficient basis to grant a dispositive motion. Section 51.007(a), however, specifically provides that a trustee may plead in his answer that he is not a necessary party to the lawsuit by a verified denial "stating the *basis for the trustee's reasonable belief* that the trustee was named as a party solely in the capacity as a trustee under a deed of trust, contract lien, or security instrument." TEX. PROP. CODE § 51.007(a) (emphasis added). The statute allows the plaintiff to file a verified response and set "forth all matters, whether in law or fact, that rebut the trustee's verified denial." *Id.* § 51.007(b). If, as here, the plaintiff does not timely respond, "the trustee shall be dismissed from the suit or proceeding without prejudice." *Id.* § 51.007(c).

Here, Raborn pleaded in his answer that he was not a necessary party to the lawsuit, noting that he was not a party to either the Settlement Agreement or the Agreed Final Judgment. Instead, he reasonably believed that he was named as a party solely in his capacity as substitute trustee under the deed of trust securing the property. He pleaded that Blackburne named him as substitute trustee and directed him to initiate foreclosure proceedings on the property after the Arthur parties allegedly breached their obligations under the Settlement Agreement and Agreed Final Judgment. The statutory language requires only that the trustee, in his verified

15

denial, state the basis for his reasonable belief that he was named as a party solely in his capacity as trustee.[5] *Id.* § 51.007(a). Raborn did so here. Under this particular statutory scheme, Raborn's denial was not deficient because it was based on his "belief."

The Arthur parties also contend that Raborn's presence in the lawsuit was required to afford them complete relief, arguing that "[i]t was [Raborn's] churning of legal work and bills beginning in 2014 which precipitated these lawsuits." The Arthur parties, however, made no allegations concerning Raborn's attorney's fees or billing practices in their original petition. Their petition contains few references to Raborn by name, and those references make clear that Raborn was acting in his

---

[5] To the extent the Arthur parties argue that Raborn's denial was substantively deficient because it was not verified, we note that Raborn supported the pleading in the answer with his unsworn declaration. He declared under penalty of perjury that the facts contained in the answer were true and correct. An unsworn declaration may be used "in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by statute or required by a rule, order, or requirement adopted as provided by law." TEX. CIV. PRAC. & REM. CODE § 132.001(a); *Gillis v. Harris Cnty.*, 554 S.W.3d 188, 192 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Such a declaration must be in writing and must be subscribed as true under penalty of perjury. *Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 291 (Tex. App.—Tyler 2021, pet. denied); *Gillis*, 554 S.W.3d at 193 (stating that "key" to unsworn declaration is that it is signed under penalty of perjury); TEX. CIV. PRAC. & REM. CODE § 132.001(c) (requiring unsworn declaration to be in writing and subscribed as true under penalty of perjury), (d) (requiring unsworn declaration to contain jurat in substantially same form as shown in statute). Raborn's unsworn declaration was in writing, signed, and made under penalty of perjury. This declaration complies with section 132.001 and may therefore be used in lieu of a verification. *See* TEX. CIV. PRAC. & REM. CODE § 132.001(a), (c), (d).

16

capacity as trustee under the deed of trust. The Arthur parties do not assert any claims against Raborn that are independent from his actions as trustee.

Moreover, all the Arthur parties' claims stem from the alleged wrongful foreclosure of the property and their attempts to prevent Blackburne from foreclosing on other properties that they own. Federal district courts interpreting section 51.007 have held that trustees are "nominal" parties in suits for wrongful foreclosure and that a trustee named solely in that capacity is not a necessary party in a suit to prevent foreclosure. *See Fairport Ventures, LLC v. Long as Tr. for U.S. Bank Nat'l Ass'n*, No. H-21-2347, 2021 WL 4267175, at *2 (S.D. Tex. Sept. 20, 2021); *Eisenberg v. Deutsche Bank Tr. Co. Ams.*, No. SA-11-CV-384-XR, 2011 WL 2636135, at *4 (W.D. Tex. July 5, 2011); *see also* TEX. PROP. CODE § 51.007(e) ("A dismissal of the trustee pursuant to Subsections (c) and (d) shall not prejudice a party's right to seek injunctive relief to prevent the trustee from proceeding with a foreclosure sale.").

Finally, the Arthur parties argue that dismissal based on their failure to file a verified response to Raborn's denial was improper because at the time their response was due, a Texas Supreme Court Emergency Order relating to the COVID-19 pandemic was in effect that suspended filing deadlines. We disagree that the trial court's order granting Raborn's motion to dismiss violated the applicable Emergency Order.

Section 51.007(b) provides that "[w]ithin 30 days after the filing of the trustee's verified denial, a verified response is due from all parties to the suit or proceeding setting forth all matters, whether in law or fact, that rebut the trustee's verified denial." TEX. PROP. CODE § 51.007(b). If the respondent does not file a timely verified response, "the trustee shall be dismissed from the suit or proceeding without prejudice." *Id.* § 51.007(c). Raborn filed his denial on March 23, 2020. The Arthur parties' response was therefore due thirty days later, or by April 22, 2020.

In response to the COVID-19 pandemic, the Texas Supreme Court has issued a series of Emergency Orders relating to the conduct of court proceedings. The court's First Emergency Order Regarding the COVID-19 State of Disaster, signed on March 13, 2020, provided, in relevant part:

2. Subject only to constitutional limitations, *all courts in Texas may in any case*, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent:

a. Modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than 30 days after the Governor's state of disaster has been lifted; . . . .

*See* 596 S.W.3d 265, 265 (Tex. 2020) (Order) (effective March 13, 2020) (emphasis added). In the First Emergency Order, the Texas Supreme Court did not, as the Arthur parties appear to argue, automatically suspend all deadlines in all cases. Instead, this Emergency Order gave trial courts broad discretion to modify or

18

suspend any deadlines and procedures prescribed by statute, rule, or order. *See Kim v. Ramos*, 632 S.W.3d 258, 269–70 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (construing similar language in Texas Supreme Court's Twenty-Ninth Emergency Order).

The First Emergency Order was in effect at the time Raborn filed his answer, which contained his pleading that the Arthur parties had sued him solely in his capacity as trustee under the deed of trust. The trial court therefore had the authority to modify or suspend the Arthur parties' 30-day response deadline. However, the Arthur parties point to no evidence in the appellate record that the trial court did so. The Arthur parties argue that the trial court issued an abatement order on March 20, 2020, but there is no indication that this abatement order was issued in the underlying proceeding. The appellate record does not contain an abatement order. The trial court's docket sheet for this proceeding contains no entry on March 20, 2020, and does not reference the entry of an abatement order at any point during the pendency of the proceeding. Instead, the email exchange between the trial court coordinator and Raborn, discussed above, indicates that the abatement order was issued in the 2019 case between the Arthur parties and Blackburne.

We conclude that the Arthur parties have not demonstrated that the trial court, by granting Raborn's motion to dismiss in part because the Arthur parties did not timely file a verified response, violated any order of the Texas Supreme Court or

another order of the trial court. We further conclude that Raborn's motion to dismiss pursuant to Property Code section 51.007 was not substantively deficient.

We overrule the Arthur parties' second issue.

## Denial of Motion to Sever

In their third issue, the Arthur parties argue that the trial court abused its discretion by denying the motion to sever their claims against Raborn into a separate cause number, which would have made the trial court's order dismissing those claims a final judgment.

Rule of Civil Procedure 41 provides that "[a]ny claim against a party may be severed and proceeded with separately." TEX. R. CIV. P. 41. "A severance divides the lawsuit into two or more separate and independent causes." *In re United Fire Lloyds*, 327 S.W.3d 250, 254 (Tex. App.—San Antonio 2010, orig. proceeding); *see Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 383 (Tex. 1985) ("A severance splits a single suit into two or more independent actions, each action resulting in an appealable final judgment.").

A claim is properly severable if (1) the controversy involves more than one cause of action; (2) the severed claim would be the proper subject of a lawsuit if independently asserted; and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues. *In re State*, 355 S.W.3d 611, 614 (Tex. 2011) (orig. proceeding); *F.F.P. Operating Partners, L.P. v. Duenez*,

237 S.W.3d 680, 693 (Tex. 2007) (quoting *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990)). We review a trial court's order on a motion to sever for an abuse of discretion. *F.F.P. Operating Partners*, 237 S.W.3d at 693; *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996) (orig. proceeding) ("Severance of claims under the Texas Rules of Civil Procedure rests within the sound discretion of the trial court.").

The trial court granted Raborn's motion to dismiss on July 13, 2020. This ruling dismissed the claims against Raborn without prejudice, but the Arthur parties' claims against Blackburne remained pending. The Arthur parties filed a motion for reconsideration of the court's dismissal order.

While the Arthur parties' motion for reconsideration was pending, the trial court granted Blackburne's motion to consolidate the underlying suit with the two previous suits that the Arthur parties had filed against Blackburne. These lawsuits did not contain any claims asserted against Raborn. Thus, at the time the trial court consolidated the three cases, the only claims asserted against Raborn had been dismissed.

On December 8, 2020, the trial court denied the Arthur parties' motion for reconsideration. Ten days later, the Arthur parties moved to sever the claims against Raborn into a separate cause number. The Arthur parties argued that the order denying reconsideration was a final order or judgment with respect to Raborn, and a

21

severance would "permit\allow the removal of Defendant Raborn from the case." Raborn responded to this motion and opposed severance.

The trial court denied the Arthur parties' motion to sever on January 5, 2021. The Arthur parties filed a notice of appeal from this order on February 5, 2021. On May 15, 2021, while this appeal against Raborn was pending, the trial court signed a final judgment disposing of the remaining claims between the Arthur parties and Blackburne in the three consolidated cases.

Texas courts have held that severing a claim after a dispositive ruling on that claim to expedite appellate review is not an abuse of discretion. *See Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 525–26 (Tex. 1982) (concluding that severance of deed-reformation claim after trial court granted summary judgment on declaratory judgment claim, "apparently in an effort to expedite appellate review of the declaratory judgment action," did not constitute abuse of discretion); *Dorsey v. Raval*, 480 S.W.3d 10, 15 (Tex. App.—Corpus Christi–Edinburg 2015, no pet.) (holding that trial court did not abuse its discretion by severing claims against particular defendant because, at time severance occurred, all claims against defendant had been dismissed by summary judgment).

Conversely, this Court has held that no authority limits a trial court's discretion and requires it to sever a claim after the trial court issues an interlocutory dispositive ruling on the claim. *Marshall v. Harris*, 764 S.W.3d 34, 35 (Tex. App.—

Houston [1st Dist.] 1989, orig. proceeding) (per curiam) (concluding that relator did not demonstrate he was entitled to mandamus relief when trial court denied motion to sever claims asserted by relator after court granted interlocutory summary judgment in favor of defendant on relator's claims); *In re De La Cerda*, No. 12-12-00149-CV, 2013 WL 451830, at *3 (Tex. App.—Tyler Feb. 6, 2013, orig. proceeding [mand. denied]) (mem. op.) (declining to grant mandamus relief when trial court refused to sever claims resolved by interlocutory default judgment). We further stated that no authority holds that a trial court abuses its discretion by denying a motion to sever claims "resolved by an interlocutory summary judgment that delays the movant's appeal." *Marshall*, 764 S.W.2d at 35.

Even if the trial court erred by denying the Arthur parties' motion to sever the claims against Raborn, we conclude that this ruling does not constitute reversible error. The trial court disposed of the claims against Raborn when it granted Raborn's motion to dismiss in July 2020, and it reaffirmed that dismissal when it denied the Arthur parties' motion for reconsideration in December 2020.

Denying the motion to sever—and keeping the claims against Raborn in the consolidated case even though no further actions needed to be taken with respect to those claims—could have potentially delayed the Arthur parties' seeking of appellate remedies against Raborn. However, the Arthur parties filed a notice of appeal from the order denying the motion to sever—resulting in this appeal—even

23

though the order denying the motion to sever was interlocutory and not appealable. The Arthur parties thus began the appellate process on their claims against Raborn, albeit prematurely. The trial court then signed a final judgment disposing of all claims and all parties in the case approximately three months after the Arthur parties filed their notice of appeal. The signing of the final judgment cured the jurisdictional defect arising from the prematurely filed notice of appeal. *See Fusion Indus., LLC v. Edgardo Madrid & Assocs., LLC*, 624 S.W.3d 843, 849 (Tex. App.—El Paso 2021, no pet.); Tex. R. App. P. 27.1(a).

The trial court's denial of the Arthur parties' motion to sever did not probably cause the rendition of an improper judgment, nor did it prevent the Arthur parties from properly presenting their case to this Court. *See* Tex. R. App. P. 44.1(a) (stating standard for reversible error in civil cases). Moreover, the only parties to this appeal are the Arthur parties as appellants and Raborn as the sole appellee. The only other issues in this appeal are whether the trial court properly dismissed the claims against Raborn; the merits of the trial court's dismissal of the Arthur parties' claims against Blackburne are not at issue in this appeal. Thus, even if the trial court erred by denying the Arthur parties' motion to sever, remanding the case to the trial court and ordering the court to grant the motion to sever would serve no practical effect. *See Meeker v. Tarrant Cnty. Coll. Dist.*, 317 S.W.3d 754, 759 (Tex. App.—Fort Worth 2010, pet. denied) ("An issue may become moot when a party seeks a ruling on some

24

matter that, when rendered, would not have any practical legal effect on a then-existing controversy."). We therefore hold that the trial court's denial of the Arthur parties' motion to sever did not constitute reversible error.

We overrule the Arthur parties' third issue.

## Conclusion

We affirm the judgment of the trial court.


April L. Farris
Justice

Panel consists of Justices Goodman, Countiss, and Farris.